## Commonwealth ex rel. Green, Appellant, *v.* Rundle.

Submitted November 13, 1963. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Samuel Green,* appellant, in propria persona.

*Arthur J. Marion* and *Arlen Specter*, Assistant District Attorneys, *F. Emmett Fitzpatrick, Jr.*, First Assistant District Attorney, and *James C. Crumlish, Jr.*, District Attorney, for appellee.

OPINION BY MR. JUSTICE ROBERTS, January 21, 1964:

In 1958, a jury found petitioner-appellant guilty of murder in the first degree and imposed a sentence of life imprisonment. Prior to and pending trial, the accused was free on bail. During the trial itself, he fled the jurisdiction. The trial was completed in his absence. While hearing the case, the jury was permitted to separate, but no objection was made to the separation. Petitioner's counsel filed a motion for a new trial, which was granted.

The accused was returned to Pennsylvania and, on October 5, 1961, appeared with new counsel before the trial court. He entered a plea of guilty generally to an indictment charging him with murder.[1] The Commonwealth certified that the evidence would not rise to a higher degree of murder than murder in the second degree. However, this would not be binding upon the court. The court, at the conclusion of all the testimony and argument by counsel, determined the degree of the offense to be murder in the second degree and sentenced petitioner to imprisonment for a term of ten to twenty years. No appeal was taken from the judgment of sentence. In December, 1962, the prisoner filed a petition for a writ of habeas corpus, to which the Commonwealth filed an answer. The court dismissed the petition without hearing.[2] This appeal is from that order.

---

[1] He also was charged in another indictment, not here involved, with involuntary manslaughter.

[2] A petition for writ of habeas corpus may be disposed of without a hearing where the facts averred or the record disclose no ground for relief. *Com. ex rel. Dickerson v. Rundle*, 411 Pa. 651, 192 A. 2d 347 (1963).

Appellant claims a denial of due process under the Fourteenth Amendment "at his second trial in which the court fixed the degree of guilt at second degree murder." He assigns several reasons for the issuance of the writ: (1) that he "was adjudged guilty of [murder in the] first degree before the court heard all of the evidence"; (2) that the sentencing judge erroneously quoted petitioner's counsel in the first trial "that it was a first degree murder case;" (3) that the court erred "in concluding that petitioner's wounds were self-inflicted;" (4) that the court erred "in comparing defendant [petitioner] with a convicted slayer (Scoleri) . . . simply because Scoleri had inflicted his own wounds"; and (5) that "the court considered his prior criminal record in determining the degree of guilt."

We have carefully reviewed both the record in the court below on the petition for habeas corpus and the entire transcript and record of the hearing on the plea. A brief recital of the basic factual background of the homicide will be helpful in view of the issues raised.

Appellant, without provocation and after previously threatening to kill the victim, stabbed him in the back of the head with a butcher knife and then proceeded to inflict a total of at least forty-nine cut and stab wounds. The two particularly damaging wounds were one in the left chest, downward and backward into the left lung, and another which cut through the muscles of the back and penetrated the small bowel. Numerous other wounds, which also could have been fatal, had been inflicted in the victim's scalp. The butcher knife was found in a nearby sewer where witnesses testified they saw petitioner drop it. A small pocket knife was found at the scene of the killing. Petitioner denied that there were two knives. He asserted that only the small pocket knife was involved and that he stabbed the victim with that knife only after he, himself, was first cut on the arm by the victim.

There is not the slightest substance to appellant's first contention that an adjudication of murder in the first degree was reached before all of the evidence was heard. The record is clear that the trial court, after hearing all the evidence, adjudicated appellant guilty of murder in the second degree. The hearing judge made no adjudication of a higher degree of murder, although after hearing testimony of appellant's prior threat to kill the victim, the court observed that he was inclined to discontinue the hearing on the plea and have the entire case presented to a jury. The court's comment at that point in the proceeding was consistent with its inquiry of the accused and counsel at the outset of the hearing.[3]

During the course of counsel's closing argument and the sentencing colloquy, the trial judge stated that he had sent for the counsel who had represented appellant at the first trial (but not in this proceeding) and had discussed the case with him. The court said that prior counsel "confirmed my view, that it was a first degree murder case." This misconception was later completely corrected. Before adjudication and imposition of sentence, the court correctly stated that it was the first trial counsel's opinion that this was a case of voluntary manslaughter. Careful review of all the attending circumstances fails to reveal any ele-

---

[3] "The Court: You have pleaded guilty generally to murder. I can't find you guilty of murder in the first degree under this plea and certification. However, if it appears to be murder in the first degree, we will call in a jury. I can find you guilty of murder in the second degree without the intervention of other Judges. I can find you guilty of voluntary manslaughter under this plea without the intervention of other Judges, and if in my opinion the evidence does not make out a case at all, I will direct you to withdraw your plea and have it placed before a jury for trial. Do you understand that? The Defendant: Yes, sir."

ment of unfairness or harm to appellant from this incident.[4]

Appellant contends also that the trial judge erroneously concluded that his wounds were self-inflicted. He urges that this false conception was not based upon evidence but rather upon an improper and unwarranted comparison of appellant's wounds with the self-inflicted wounds of another defendant convicted of felony murder. In discussing this aspect, the court commented: "It gives rise at least to the presumption, his having a knife and disposing of the knife, that it was self-inflicted. . . . All right, you [defense counsel] think he didn't do that, a prison-wise fellow. I know a current case, Scoleri, who did it [i.e., inflicted wounds upon himself]."

In *Commonwealth v. Carroll*, 412 Pa. 525, 533, 194 A. 2d 911, 916 (1963), we restated the long and well-established principle that: "a trial Court can believe all or a part of or none of a defendant's statements, confessions or testimony, or the testimony of any witness. [Citing cases.]" The trial court may accept or reject any testimony, whether or not corroborated or contradicted. There is present in this record adequate evidence from which a conclusion of self-infliction could have been drawn by the trial judge. Without provocation, appellant stabbed the victim in the back of the head with a butcher knife and proceeded with additional assaults. The trial judge, accepting this as true, was then faced with these additional circumstances: (1) since the victim was stabbed in the back, the unreasonable assumption that there had been an assault on appellant prior to the stabbing; (2) appellant's prior threat to kill the victim; (3) appellant's disposal of

---

[4] However, we do not condone and expressly disapprove and discourage such private consultation by the trial judge with prior defense counsel, either at the court's initiative, as here, or otherwise.

the butcher knife, thus showing an intent to prevent detection, arrest and conviction, (4) the pocket knife, a weapon necessarily smaller than the butcher knife and probably insufficient in size to penetrate the left lung and to cut through the muscles of the back to a depth sufficient to enter the small bowel.

In view of these attending circumstances, the trial judge was justified in doubting appellant's explanation of the origin of his own wounds. It was within the court's province to reject the explanation that the victim had inflicted the wounds on his assailant's arm.

Surely, in the light of the evidence, the trial judge did not err in expressing his doubts as to the source of appellant's wounds. The trial judge, by making known his doubts, invited further explanation and comment by defense counsel. The added opportunity for counsel to dispel such doubts was advantageous, not harmful, to appellant. It seems far more desirable for the court to express its impressions than to entertain unresolved doubts and remain silent. Furthermore, there is nothing on the record to indicate that counsel did not succeed in convincing the court that the wounds were not self-inflicted or in persuading the court not to refer the case to a jury.[5]

Entirely unreasonable and utterly devoid of merit is appellant's contention that the trial judge arrived at his conclusion on the arm wounds contrary to appellant's evidence and that the court thus committed error. The conclusion which the court reached, although not supported by defendant's evidence, is one which the court was logically and legally justified in reaching on the basis of the Commonwealth's evidence, including appellant's plea of guilty to murder generally.

Equally applicable here is this Court's observation in *Commonwealth v. Kurus*, 371 Pa. 633, 637, 92 A. 2d

---

[5] See footnote 3, supra.

196, 198 (1952) : "The court was under no legal duty to accept as absolute verity the defendant's recital of the circumstances attending the homicide. Nor could the court have justifiably done so in the light of all of the evidence in the case. That the testimony made out a case of murder is not open to question. The facts warranted a finding that the defendant used the deadly weapon on a vital part of the deceased's body with malice aforethought. . . . Inasmuch as a plea of guilty generally to an indictment for murder automatically constitutes the crime murder in the second degree, the burden is on the Commonwealth if it desires to raise the degree to first, to produce the necessary testimony: [citing cases]."

In *Commonwealth ex rel. Dandy v. Banmiller*, 397 Pa. 312, 315-16, 155 A. 2d 197, 199 (1959), we held, "When the appellant entered his plea of guilty, under the statute[6] . . ., he became 'convicted' of murder and it then became the duty of the court, not a jury, to fix the degree of murder and determine the appropriate sentence."

Appellant's final contention that the court considered his prior criminal record in determining the degree of guilt is without factual basis and without merit.

In adjudicating appellant guilty of murder in the second degree and imposing sentence accordingly, the court's finding and disposition were in strict accordance with appellant's plea of guilty and were fully supported by the whole record and the governing authori-

---

[6] The Penal Code of 1939, June 24, P. L. 872, §701, as amended, 18 P.S. §4701, provides in part, after defining first degree murder: "All other kinds of murder shall be murder in the second degree. . . . If such a person [one indicted for murder] is convicted by confession, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly."

ties. We are entirely satisfied that no right of appellant has been infringed, denied or violated. He has been accorded every right and protection which the law makes available to him. In the absence of any factual legal basis for issuing the writ, the court below properly dismissed the petition.

Order affirmed.