Commonwealth *v.* Dickerson, Appellant.

Submitted April 17, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Neil Leibman,* for appellant.

*Peter J. Smith* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 4, 1972:

On September 18, 1970, the appellant, Pecola Dickerson, entered a general plea of guilty to an indictment charging her with the murder of one Granville Sawyer.[1] As part of a plea bargain the Commonwealth had certified that the charge rose no higher than second degree murder. After the taking of testimony, appellant was adjudged guilty of murder in the second degree and was sentenced to a term of imprisonment of not less than three nor more than ten years. No appeal was taken.

---

[1] Mrs. Dickerson was indicted on bills of murder, conspiracy, aggravated robbery and burglary. The latter three bills were nol prossed at the time of the plea.

Appellant was represented at the plea proceeding, as she had been at an earlier suppression hearing, by co-counsel, Morris P. Baran and Harry D. Sporkin, Esquires.

In March of 1971 appellant filed a Post Conviction Hearing Act petition, contending, inter alia, that her guilty plea was invalid because it was induced by a promise of a specific sentence which was not kept.[2] After an evidentiary hearing, the lower court denied relief and this appeal was then taken.

A summary of the facts of this case, as related by the assistant district attorney at the time the plea was entered, is as follows: On July 11, 1969, appellant and two other persons (Carolyn Carrecter and Irvin Moore) were cruising the streets of Philadelphia in an automobile looking for narcotics. After a time they proceeded to the residence of Granville Sawyer to steal money to obtain the drugs. Shortly after appellant and Moore entered these premises, a shot was heard. Neighbors then saw Sawyer come to the door of his home holding his stomach and saying, "the man shot me in the belly." Appellant later surrendered to police and made a statement acknowledging her participation in the crime. The statement to police and appellant's testimony at Irvin Moore's trial were that she was upstairs looking for objects to steal when a commotion started, punctuated by a gun shot. As Sawyer staggered toward the front door, Moore and appellant ran out the back entrance.

---

[2] Appellant filed a "shotgun" petition, alleging: (a) introduction of a coerced confession into evidence; (b) infringement of her privilege against self-incrimination; (c) denial of her right to representation by competent counsel; (d) a plea of guilty unlawfully induced; (e) obstruction of her right to appeal; and, (f) abridgement of a constitutional right not recognized at the time of trial.

Testimony at the PCHA hearing, however, centered around the decision to plead guilty and the validity of the plea. Assuming appellant was unconstitutionally deprived of her right to appeal, no prejudice resulted since the only questions available on direct appeal are fully cognizable in the instant collateral proceeding. *Commonwealth v. Ward*, 442 Pa. 351, 275 A. 2d 92 (1971).

Appellant attempted to have her confession suppressed contending that she was under the influence of drugs at the time it was given. A pretrial hearing was conducted before Judge WEINROTT and the motion was denied.

The post-conviction hearing was held before Judge DOTY on June 10, 1971. At that time appellant testified that her guilty plea was motivated by a promise of an eleven and one-half to twenty-three month sentence made by the Assistant District Attorney William Stevens. She also alleged that her attorneys showed a decided lack of interest in the case, never explaining why she was charged with murder nor why she should plead guilty.

Mr. Baran, a member of the bar with extensive experience in the trial of criminal cases, testified at this hearing that he and his co-counsel had discussed with appellant the question of entering a guilty plea and the various alternatives prior to the time of trial. He refuted the charges of disinterest by noting that together with his colleague he had met with Mrs. Dickerson on at least six occasions to discuss the case and prepare for trial. He stated he had no knowledge of any promise of an eleven and one-half to twenty-three month sentence and asserted that the only promise made was the second degree certification together with a *recommendation* of a two to five year sentence, adding that this promise was kept.[3] The assistant district attorney denied that he made any promises other than those related by Mr. Baran.

Obviously, these allegations raised a question of credibility and the PCHA hearing judge chose to believe (as was his discretionary right) the testimony

---

[3] Assistant District Attorney Stevens made the recommendation of two to five years in open court but Judge WEINROTT rejected it and imposed a three to ten year sentence.

given by counsel. See *Commonwealth v. Holl*, 434 Pa. 312, 254 A. 2d 11 (1969).

The question raised by this appeal, as framed by counsel for appellant, is whether a promise made by a district attorney to make a recommendation for a specific lenient sentence, when not followed by the sentencing judge, allows the defendant the privilege of withdrawing the guilty plea. If the query is answered in the affirmative, it is argued, then it follows of necessity that the failure of counsel to inform the defendant of this option is per se inadequate representation. It is further asserted that our Court decided this question in the affirmative in the case of *Commonwealth v. Evans*, 434 Pa. 52, 252 A. 2d 689 (1969), and hence, that decision is controlling here.

*Evans* is not this case. In *Evans* the sole issue was whether it was proper for the trial judge to *participate* in the plea bargaining. This Court said such a procedure was not consistent with due process and that a plea entered on the basis of a sentencing agreement in which the judge participates cannot be considered voluntary.

Appellant relies heavily on language found in a footnote to the Evans case wherein we adopted Section 3.3(b) of the A.B.A. Minimum Standards for Criminal Justice, Pleas of Guilty (Approved Draft 1968). This section reads in pertinent part: " 'If a tentative plea agreement has been reached which contemplates the entry of a plea of guilty or nolo contendere in the expectation that other charges before that court will be dismissed or that sentence concessions will be granted, upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. He may then indicate to the prosecuting attorney and defense counsel whether he will concur in the pro-

posed disposition. . . .' " Citing the commentary to the section, Mr. Justice ROBERTS, speaking for the Court, went on to explain in this footnote:

" 'This [plea] procedure . . . does not contemplate participation by the judge in the plea discussions. The judge *only* becomes involved *after* the parties have reached agreement, and thus there would appear to be little basis upon which the defendant or counsel could conclude that the judge is attempting to force a certain result upon the parties.'

"The ABA Standards also permit a withdrawal of the plea if the trial judge decides his original agreement was inappropriate. 'If the trial judge concurs [in the plea bargain] but later decides that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement, he shall so advise the defendant and then call upon the defendant to either affirm or withdraw his plea of guilty or nolo contendere.' ABA Minimum Standards, Pleas of Guilty, 3.3(b) (Approved Draft 1968). Implicit in our holding today is an acceptance of this provision as well." 434 Pa. 56.

The situation confronted in the *Evans* decision and envisioned in its accompanying footnote is readily distinguishable from that present instantly. The distinction stems from the fact that in this case, Judge WEINROTT did not participate in the plea bargaining sessions nor did he indicate concurrence in the proposed disposition. In fact, the record indicates the trial judge was not aware of the arrangement worked out between the district attorney's office and counsel for defendant until the recommendation was made at the time the plea was entered. Hence, appellant had no reasonable basis to believe that the recommendation of a two to five year sentence was anything more than a *mere recommendation*. As a matter of record there was an

extensive colloquy between Mrs. Dickerson and her attorney, Mr. Baran, prior to the entry of the plea in which he carefully informed her of the non-binding nature of the recommendation.

"Q. [By Mr. Baran] And at that time we advised you of the fact that we had engaged in certain plea bargaining with the District Attorney; is that correct? A. Yes. Q. We also advised you that Judge Weinrott was not a party to any of those bargaining sessions and is not bound by the same. Do you understand that? A. Yes. Q. Do you further understand the fact that we have had discussions with Mr. Stevens and he has advised us that he is going to make a recommendation? A. Yes. Q. And did I not tell you that that recommendation was going to be for a prison sentence of from two to five years? A. Yes. Q. Did I further tell you that this is not binding upon the Trial Judge and that he neither has to accept nor reject the same, but can make his own determination based on the facts? A. Yes."

Where the district attorney enters into and keeps a plea bargain to recommend a certain sentence to the court, and the defendant clearly understands this recommendation is not binding on the court, as this record persuasively demonstrates, the plea is not rendered invalid merely because the court rejects the district attorney's recommendation.

Order affirmed.