342 A.2d 387
**COMMONWEALTH of Pennsylvania, Appellee,**
**v.**
**Marvin PALMER, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Nov. 22, 1974.

Decided June 7, 1975.

Rehearing Denied Aug. 18, 1975.

Abraham T. Needleman, Needleman, Needleman, Tabb & Eisman, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Carolyn Engel Temin, Asst. Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty., for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Marvin Palmer, the appellant herein, was convicted by a jury of murder in the second degree, carrying a concealed deadly weapon and unlawfully carrying a firearm.[1] Motions for a new trial and/or arrest of judg-

---

1. Demurrers to bills of indictment charging conspiracy and playfully and wantonly pointing a firearm were sustained at trial.

ment were denied. A prison sentence of seven to fifteen years was imposed on the murder conviction and a concurrent prison sentence of three years was imposed on the firearms conviction. These appeals followed.[2]

The prosecution emanated from the fatal shooting of Robert Williams, a sixteen-year-old youth, as he left the Chicken Pox Club on West Allegheny Avenue in Philadelphia, around midnight on May 19, 1972. Palmer was identified by eyewitnesses as the one who fired the shots. On the basis of this information, the police arrested Palmer without a warrant at 6:30 a.m. the following morning, and charged him with murder.

The sufficiency of the evidence to sustain the conviction is not questioned. However, Palmer asserts several errors in the prosecution process require a new trial. We do not agree and thus affirm.

The primary assignment of error relates to the use at trial of inculpatory statements and physical evidence obtained from Palmer by the police. It is said this evidence was the product of an unnecessary delay between arrest and arraignment and should have been suppressed. See Rule 118 (now 130) of the Pennsylvania Rules of Criminal Procedure. See also *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). The relevant facts, as disclosed by the record, are as follows:

After his arrest, Palmer was transported directly to Homicide Headquarters in the Police Administration Building. Upon his arrival at 7:05 a.m., Palmer was placed in an interview room where he remained alone until 9:10 a.m. At that time he was advised of his constitutional rights, as mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and informed of his suspected involvement in the Williams shooting. He was then questioned about the shooting

---

**2.** An appeal from the sentence imposed on the murder conviction was filed in this Court. An appeal from the firearms conviction was filed in the Superior Court and later certified here.

and within twenty minutes admitted he fired the shots. He also told the police the gun used was hidden in some bushes. These admissions were then reduced to a written statement, which Palmer signed. The interview session ended at 10:30 a.m. and Palmer was then left alone to rest. About 11:30 a.m., Palmer agreed to a polygraph examination. Upon its completion, Palmer spoke to his father and then told the police that the gun was really hidden in his home. The meeting ended at 2:10 p.m. For the next hour and a half Palmer ate and rested. This respite was interrupted with a second reading of his *Miranda* warnings and the taking of another written statement. It was identical to the first statement except for averments concerning the gun's disposal. This statement was completed and signed at 5:52 p.m., when Palmer was permitted to rest for another hour. He then accompanied the police to his home where the gun was secured. Upon returning and resting another hour, the police repeated the *Miranda* warnings once again and Palmer gave a third written statement, which he also signed. It described the trip to his home and was completed at 8:45 p.m. Following a meal, all three statements were read and recorded on tape. Palmer was then left alone until approximately 12:30 a.m. on May 21st, at which time he was slated and taken to a cell room where he was later arraigned. In all, eighteen hours had elapsed between the arrest and the time he was taken to the cell room for arraignment.[3]

 Assuming arguendo, there may have been an "unnecessary delay" between the arrest and Palmer's initial incriminatory statement,[4] the evidentiary use of his

---

3. The record does not exactly identify the time of arraignment.

4. Palmer's argument that the instant delay was unnecessary is premised on the assumption that for purposes of Pa.R.Crim.P. 118, the applicable time period is between arrest and arraignment. This analysis is incorrect. The crucial period is between arrest and the securing of a confession. Any delay after the confession does not taint the admissibility of the confession. See, e. g, *United States v. Mitchell*, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); *Virgin Islands v. Gereau*, 502 F.2d 914 (3d Cir. 1974).

statements and the physical evidence at trial was not proscribed under Rule 118 because this evidence was not reasonably related to the delay. See *Commonwealth v. Rowe,* 459 Pa. 163, 327 A.2d 358 (1974).

As we emphasized in *Commonwealth v. Tingle,* 451 Pa. 241, 245, 301 A.2d 701, 703 (1973), "Futch did not, and we do not here, establish a per se rule that all evidence obtained during an unnecessary delay be excluded. It is only upon the defendant's showing of prejudice from the delay, i. e., a nexus between the delay and the challenged evidence that he is entitled to relief." Instantly, there is no nexus.

When Palmer arrived at Homicide Headquarters in the Police Administration Building at 7:05 a.m., he was immediately placed in an interview room where he remained alone until questioning began at 9:10 a.m. The purpose of this delay is not clear from the record, nor does the Commonwealth attempt to justify it. What is clear, however, is that during this two hour interval the police did not question Palmer. Moreover, once the questioning began, Palmer's *Miranda* warnings were immediately given. Further, within twenty minutes after the questioning began and just two and one-half hours after his arrest, Palmer confessed to the shooting. Under these circumstances, we cannot find Palmer's first statement to be a product of the delay. Cf. *Commonwealth v. Davis,* 460 Pa. 644, 334 A.2d 275 (1975); *Commonwealth v. Young,* 460 Pa. 598, 334 A.2d 252 (1975); *Commonwealth v. Rowe,* supra. Likewise, we find no error in the trial court's refusal to suppress the second statement. It contained the same averments as the first statement, with the only difference being a reference to the disposition of the weapon. This, however, merely constituted an embellishment of the first statement's admission that Palmer used a gun. That fact already admitted, the second statement was in essence a reiteration of the first. Cf. *Commonwealth v. Rowe,* supra. Hence, the nexus is again missing.

Finally, there was no error in admitting into evidence the gun and the third written statement. The statement, while not being recorded until fourteen hours after Palmer's arrest, added no new facts to those already properly admitted into evidence. It merely described the trip to his home in search of the gun. Moreover, the actual recovery of the gun was not crucial since Palmer in his initial statement admitted having fired it at the decedent. Thus, even assuming the gun and statement were products of an "unnecessary delay", their admission constituted harmless error.

■ Palmer next complains that an ex parte discussion between defense counsel and the trial judge negated his right to a fair trial. The discussion is not on the record. Nonetheless, Palmer alleges it was initiated by the trial judge who recommended that he plead guilty. Accepting as true Palmer's description of the conversation, we find no error.

The meeting took place during a luncheon recess. Following commencement of the afternoon session, defense counsel made a motion for a mistrial. He averred that at the close of the morning session, the trial judge asked to confer with him, first at sidebar and later in chambers. The assistant district attorney was not invited to participate. In chambers the trial judge allegedly [5] "suggested that [defense counsel] have [his] client plead and, whether the decision was voluntary manslaughter or second degree, [the trial judge] would still insist that the defendant get a minimum of no less than five and a half

5. Defense counsel's version was uncontradicted at trial. However, the trial judge posited a different version in his opinion denying post trial motions. Therein, he asserted that only in response to defense counsel's complaint that a lengthy trial might interfere with his future travel plans did he suggest "that counsel speak not to his client, but to the assistant district attorney regarding a plea to second degree murder." Upon defense counsel's inquiry as to a potential sentence, the trial judge replied that a second degree murder conviction would receive no less than a five and one-half year sentence.

years." Defense counsel stated he would not recommend such a plea or sentence to his client. In response, the trial judge allegedly stated that if certain additional evidence were introduced at trial Palmer "may get a sentence in excess of five and a half years".

Based on these alleged facts, Palmer argues that the rationale prohibiting a judge from participation in plea bargaining as enunciated in *Commonwealth v. Evans*, 434 Pa. 52, 252 A.2d 689 (1969), is instantly applicable.[6] We do not agree. In *Commonwealth v. Evans*, supra, the sole issue was whether it was proper for a trial judge to participate in plea bargaining. Mr. Justice Roberts, speaking for the Court, stated that "such a procedure is not consistent with due process and . . . a plea entered on the basis of a sentencing agreement in which the judge participates cannot be considered voluntary". *Commonwealth v. Evans*, supra at 54, 252 A.2d at 690. This position was reaffirmed in *Commonwealth v. Sanutti*, 454 Pa. 344, 312 A.2d 42 (1973).

In *Commonwealth v. Sanutti*, supra, opposing counsel met with the trial judge in chambers specifically to discuss a potential guilty plea. As in this case, there was no record of the conference. However, opposing counsel stipulated that a guilty plea was discussed and the trial judge made no commitment. Sanutti then plead guilty. When a one to five year sentence was imposed, he attacked the validity of the plea as not being knowing and intelligent. In denying relief, this Court, speaking through Mr. Justice Pomeroy, delineated the term "participation" as used in *Commonwealth v. Evans*, supra.

6. Palmer relies on Pa.R.Crim.P. 319(b)(1), which states "The trial judge shall not participate in the plea negotiations preceding an agreement." The note following defines the rule's purpose as "to insure that it [plea bargaining] does not involve prejudicing or compromising the independent position of the judge. See also *Commonwealth v. Rothman*, 222 Pa.Super. 385, 294 A.2d 783 (1972); *ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty*, § 3.3(a) (Approved Draft 1968).

" 'Participation', in the sense there used, denotes some active role in discussion or negotiation relative to a plea." *Commonwealth v. Sanutti*, supra at 348, 312 A.2d at 44. Instantly, we assume the trial judge did take an active role in the discussion of a potential plea. Nonetheless, neither the mandate of *Evans* or *Sanutti* is applicable. Those decisions safeguard a defendant's due process rights during all stages of plea bargaining. Their purpose is to insure voluntary and intelligent pleas. These considerations are not present today. Herein, there was neither a plea bargain nor a guilty plea. Nor was the jury ever informed that the conversation had taken place.

Nonetheless, Palmer urges us to extend the *Evans* rationale to the instant facts because of the potential dangers inherent in this type of situation. He asserts that a judge's participation in discussions concerning the possibility of a plea is likely to compromise his neutrality when a defendant does not adopt a judge's suggestion to plead guilty because, as a result, evidentiary issues may not be objectively ruled upon and a jury may not receive fair instructions. In addition, subtle prejudicial actions could occur and go undetected. But most significantly, Palmer voices concern that a penalty via a higher sentence will be imposed on those defendants rejecting the judge's recommendation.

All of the aforementioned circumstances, however, go to judicial misconduct and are not so interwoven with the due process considerations of plea bargaining as to require an application of the *Evans* rationale. Cf. *Commonwealth v. Dickerson*, 449 Pa. 70, 295 A.2d 282 (1972). Palmer's assignment of error must, therefore, be denied unless he can demonstrate some actual prejudice. He has failed to do so. The allegation that a higher sentence was imposed because he did not plead guilty is not supported by Palmer's own version of the conference. He admits a maximum sentence was not discussed,

and that no threat was made to impose a higher sentence.[7] In addition, it is significant to note that Palmer does not claim the trial judge was prejudiced against him; that anything occurred prejudicing him before the jury; or that the province of the jury was invaded in any way. These factors, plus a careful review of the record, convince us that Palmer's trial comported with due process standards and, as a result, a just sentence was imposed.[8]

Palmer's third assignment of error is the lower court's failure to strike certain testimony elicited by the assistant district attorney upon redirect examination of a Commonwealth witness, Detective Porter. The colloquy was as follows:

"Q. What if anything, did he [defendant's father] say?

"A. He stated to me that he was sorry that his son had got himself into this homicide-shooting, and he stated that he was going to leave the —"

Defense counsel's objection as to further statements was sustained. A request, however, to have the testimony stricken was refused. Palmer claims the lower court's ruling was error because the testimony was highly prejudicial in that therefrom the jury could conclude his father believed him guilty. Even assuming this is so, the incident does not require a new trial. As we have often

---

7. But see, *Euziere v. United States,* 249 F.2d 293 (10th Cir. 1957), where the judge threatened the defendant with a maximum sentence if he went through with trial and was found guilty, and *United States v. Tateo,* 214 F.Supp. 560 (S.D.N.Y.1963), where the trial judge communicated to defense counsel a threat of consecutive sentences on several counts if the defendant did not plead guilty. In each instance, the guilty plea was set aside.

8. Despite our ruling in this case, we feel it obligatory to reiterate the caveat expressed in *Commonwealth ex rel. Green v. Rundle,* 413 Pa. 401, 405 n. 4, 196 A.2d 861, 864 (1964): "[W]e do not condone and expressly disapprove and discourage . . . private consultation by the trial judge with . . . defense counsel, either at the court's initiative, as here, or otherwise."

noted, " '[e]very unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial' ". Rather the remark must be " '*of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial*' ". [Emphasis in original.] *Commonwealth v. Goosby,* 450 Pa. 609, 611, 301 A.2d 673, 674 (1973), quoting from *Commonwealth v. Phillips,* 183 Pa.Super. 377, 382, 132 A.2d 733 (1957). The challenged statement clearly does not rise to the level of depriving Palmer of a fair trial. This is especially true since the remark was an isolated one and no further mention was made either at trial or in closing argument. Cf. *Commonwealth v. Goosby,* supra. Finally, if counsel viewed the statement as harmful, a cautionary instruction should have been requested. No such request was made.

Palmer's final assignment of error is that several statements by the assistant district attorney during summation were improper and prejudicial. An examination of the record, however, discloses that this assignment of error has not been preserved for appellate review in the trial court, and, hence, may not be asserted on appeal. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972).

Judgments affirmed.

ROBERTS, J., dissents.

MANDERINO, J., filed a dissenting opinion.

NIX, J., did not participate in the consideration or decision of this case.