**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Kenneth WHITE, Appellant.**

Superior Court of Pennsylvania.

Argued May 24, 2001.
Filed Dec. 14, 2001.

Gary S. Server, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: FORD ELLIOTT, BROSKY and BECK, JJ.

---

**3.** Pa.R.Crim.P. 1410 has been renumbered as Pa.R.Crim.P. 720.

BROSKY, J.

¶ 1 Kenneth White (Appellant) appeals from the judgment of sentence imposed upon him after he pled guilty to aggravated assault and possession of an instrument of crime. The Appellant raises three issues for our review. First, Appellant alleges he was denied the effective assistance of counsel as a result of counsel's failure to secure a written plea agreement, complete with contingency for withdrawal. The second and central issue suggests the trial court erred in refusing Appellant permission to withdraw his plea. Finally, Appellant questions whether the trial court abused its discretion at sentencing, particularly in light of the mitigating circumstances and public policy considerations at play. We vacate and remand.

¶ 2 By way of a colloquy, the Appellant admitted the following facts. On the 27th of December 1999 the Appellant and his cousin, Mr. Charles Cook, were spending the late afternoon at 2211 N. Gratz Street in Philadelphia. At approximately 4:00 P.M., an argument ensued between the Appellant and Mr. Cook. The argument culminated with the Appellant firing four (4) shots from a .38 caliber pistol, one of which struck Mr. Cook in the right knee. Mr. Cook was subsequently treated and released from Temple University Hospital.

█ ¶ 3 Appellant was subsequently charged with recklessly endangering another person, criminal mischief, making

terroristic threats, simple assault, carrying an unlicensed firearm, carrying a firearm in public, aggravated assault, possession of an instrument of crime, and attempted murder. On or about April 10, 2000, the Appellant entered into an "open plea agreement"[1] to the charges of aggravated assault, a felony in the first degree, and possession of an instrument of crime, a misdemeanor in the first degree. In exchange, the Commonwealth agreed to demandatorize and defer sentencing.[2] After appropriately instructing the Appellant of his rights and determining the submission of the plea was knowing and voluntary, the Honorable Sheldon C. Jelin accepted the plea. As per the terms set forth in the written guilty plea colloquy, Judge Jelin deferred sentencing and defense counsel waived Pa.R.Crim.P. 1405. Also, as contemplated by Appellant and the ADA, Appellant provided substantial information regarding open homicide cases.

¶ 4 Sentencing commenced on June 8, 2000 during which Appellant's counsel made a plea for a sentence involving county time. Based upon Appellant's considerable cooperation with the Commonwealth on the open homicide investigations, the Commonwealth recommended a county sentence. However, noting the disparity between the sentencing guidelines and a county sentence, Judge Jelin expressed an unwillingness to sentence the Appellant to county time. In response, Appellant verbally sought to withdraw his plea, but his

---

1. The differences in the type of plea agreements has been explained as follows: "In an open plea agreement, there is an agreement as to the charges to be brought, but no agreement at all to restrict the prosecution's right to seek the maximum sentences applicable to those charges. At the other end of the negotiated plea agreement continuum, a plea agreement may specify not only the charges to be brought, but also the specific penalties to be imposed." *Commonwealth v. Porreca*, 389 Pa.Super. 553, 567 A.2d 1044, 1047 (1989),

rev'd on other grounds at 528 Pa. 46, 595 A.2d 23 (1991).

2. Upon the record, this was all the Commonwealth offered Appellant in exchange for his plea. However, it is clear there was an off-the-record "agreement" that went much further. This agreement called for Appellant to provide substantial information regarding open homicide cases in exchange for a sentencing recommendation of possibly "county time." We will discuss this matter in greater depth *infra*.

request was promptly denied and a sentence of four (4) to eight (8) years and court costs amounting to $195 was imposed. Appellant subsequently filed post-sentence motions to withdraw the guilty plea and for reconsideration of sentence. Upon denial of both motions, the Appellant filed a timely Notice of Appeal.

¶ 5 In order to properly assess the present case, we must first gain an understanding of the precise nature of the plea agreement reached between Appellant and the Commonwealth's attorney. Although termed an "open plea agreement," and although a written guilty plea colloquy does exist and terms of the "agreement" were placed upon the record during the colloquy, it is clear the bargained-for-exchange between Appellant and the Commonwealth goes beyond the terms expressed therein. Indeed, it would seem the nucleus of the terms negotiated between the Commonwealth and Appellant is not recorded in a written plea bargain, nor was it specifically placed on the record of the plea colloquy. Specifically, the written guilty plea colloquy speaks only to demandatorizing and deferring sentencing, while later discussion on the record clearly reflects the inclusion of a sentence recommendation.

¶ 6 It should be noted at the outset that this is not a case where the criminal defendant asserts that he was induced to plead guilty by off-the-record promise(s) but where the only evidence of this fact is the defendant's own assertions. Such a situation provides a considerable problem of proof of the off-the-record promise(s). An examination of the record reveals that there is no real dispute that Appellant had bargained for a recommended sentence from the Commonwealth that did not appear on the record.[3] Indeed, the parties entered a stipulation to that effect. At the hearing on Appellant's Post Sentence Motion, defense counsel and the ADA entered the following stipulation: "The Commonwealth and I both stipulate that it was the defendant's understanding that he would be given the Commonwealth's recommendation at sentencing and the defendant was willing to accept whatever the Commonwealth's recommendation would be at sentencing." Prior to this, and prior to imposition of sentence, ADA Voci stated at sentencing: "The Defendant was working with Detective McDermott on a number of matters we told your Honor about at sidebar. **He has lived up to his end of the bargain** and we recommend a county sentence on the shooting." N.T. Sentencing, 6/8/00. (Emphasis added). Lastly, at the Hearing on Appellant's Post–Sentence Motion, Appellant's counsel explains, "... we came to this agreement that the defendant's plea would be open but that the Commonwealth would make a recommendation to the court and that defendant would accept that recommendation." N.T. Post–Sentence motion hearing, 6/28/00 at 28.

¶ 7 The stipulation, in conjunction with the comments of respective counsel made upon the record, clearly evidence that the bargain between the Commonwealth and Appellant went beyond those terms set

---

3. Defense counsel indicated that the reason the parties proceeded on the record with an "open plea" as opposed to a negotiated plea, was to assist the Commonwealth in prosecution of a murder case to which Appellant provided key information. N.T. Post–Sentence Motion Hearing, 6/28/00 at 27. Apparently the reasoning for keeping key aspects of the agreement off the record was this, by keeping the promise of a sentence recommen-

dation off the record there would be less ammunition for impeachment of Appellant when he testified in the homicide case(s) for which he had provided useful information. While Appellant's counsel was not a sworn witness, we note that the Commonwealth's attorney did not take issue with counsel's assertions and, in fact, expressed his opinion that Appellant's motion to withdraw the plea should be granted.

forth on the record and called for the Commonwealth to make a sentencing recommendation. While the evidence suggests that the recommendation, although promised, was not pre-determined at the time the agreement was reached—rather, it appears that the recommendation was contingent upon Appellant's provision of helpful information during the period between the entry of the plea and sentencing—it appears clear that there was a bargained-for-exchange that included a sentencing recommendation.[4] Having firmly established there was indeed a recommended sentence included in the negotiated plea agreement,[5] we can turn to the law relevant to such matters and address the ultimate issue before us; i.e. should the Appellant be permitted to withdraw his plea.

¶ 8 In the interests of the orderly administration of the criminal justice system the right of the Commonwealth and a criminal defendant to enter into dispositional contracts, or "plea agreements," is well recognized. While the Commonwealth and a criminal defendant are free to enter into an arrangement that the parties deem fitting, the terms of a plea agreement are not binding upon the court. Rather the court may reject those terms if the court believes the terms do not serve justice. The question then becomes what is the consequence of the court's rejection of a negotiated plea between the defendant and the Commonwealth, particularly, a failure to sentence in accordance with a sentencing recommendation.

¶ 9 Both parties seem to concede that the leading case on this matter is *Com-*

4. Indeed, ADA Voci refers to the understanding between Appellant and the Commonwealth as a "bargain," which, of course, is simply a more colloquial term to refer to an agreement or contract. It is also clear that the Commonwealth's ensuing recommendation could be as friendly to Appellant as to represent "county time" if Appellant's cooperation rose to the level contemplated at the time the plea was entered.

5. We note that the Commonwealth has not asserted that the promise was invalid because it was not placed upon the record in open court. We further note that the Commonwealth does not appear to contest that it agreed to make a sentence recommendation. Rather, the Commonwealth primarily argues that the failure of the court to sentence in accordance with the recommendation did not entitle Appellant to withdraw the plea under *Commonwealth v. Porreca*, 528 Pa. 46, 595 A.2d 23 (1991).

There is language in *Commonwealth v. McElroy*, 445 Pa.Super. 336, 665 A.2d 813 (1995), that might arguably support the proposition that the promise to recommend a sentence was rendered invalid by the failure to place it upon the record. This passage reads "This Rule has been interpreted by our supreme court to mean that no plea agreement exists unless and until it is presented to the

court." *See McElroy*, 665 A.2d at 816. In the present case, while the promise to recommend a sentence was not placed on the record, it is impossible to determine exactly what was "presented to the court" as considerable dialogue apparently took place at side bar off the record. Nevertheless, we would also note that both *McElroy* and *Commonwealth v. Spence*, 534 Pa. 233, 627 A.2d 1176 (1993), which *McElroy* cites for support, involved executory contracts and the right of specific performance of a plea agreement that had not been consummated. Additionally, *Commonwealth v. Porreca, supra,* also cited for support of this proposition dealt with the specific performance of an agreement that had been supplanted by a subsequent plea agreement. In contrast, here the agreement was no longer executory. The Commonwealth received the benefit its promise induced, substantial cooperation and the provision of helpful information, and Appellant had already entered his plea. To disallow the promise under such circumstances would seemingly offend concepts of fundamental fairness. Although it does not appear that there was underhanded dealing in the present case, an unscrupulous prosecutor could make substantial promises off the record, convince the defendant to keep it off the record and then renege without impunity after receiving favors from the defendant.

*monwealth v. Porreca,* 528 Pa. 46, 595 A.2d 23 (1991), yet, unfortunately, this confluence of viewpoint as to the controlling authority does not extend to a similar consensus as to the appropriate result. Based upon language found in *Porreca,* Appellant asserts that the court's failure to follow the Commonwealth's sentencing recommendation presents him with the option of withdrawing his plea. The relatively unambiguous passage from *Porreca* spawning Appellant's assertion follows:

> "We now **expressly adopt** the rule of [*Com. v.*] *Dickerson[,* 449 Pa. 70, 295 A.2d 282 (1972)], and hold that when a written plea agreement includes specific language that the defendant knowingly waives his right to withdraw his plea if the trial judge should not concur in the recommended sentence, the defendant is not entitled to withdraw his plea; but if a plea agreement is silent on whether the defendant may withdraw the plea in the event that the trial court does not concur in the recommended sentence, the defendant shall be entitled to withdraw his plea, as is the current practice under Rule 319."

595 A.2d at 26. (Emphasis added).

¶ 10 Based upon the above quoted passage, the resolution of the present case would seem an elementary exercise. The "agreement" between the Appellant and the Commonwealth did not include a written waiver of the right to withdraw the plea upon the court's rejection of the Commonwealth's sentencing recommendation. Indeed, the written "plea agreement" signed by Appellant contains a clause that states "I know if the judge does not go along with the plea bargain or agreement, I can withdraw my guilty plea and have a trial before a judge and jury or before a

judge alone." Plea Agreement, p. 1. Thus, per the above quoted passage, Appellant would seemingly have the option of withdrawing his plea as a result of the sentencing court's rejection of the Commonwealth's sentencing recommendation.

¶ 11 However, not to be outdone the Commonwealth, taking a contrary position to that expressed at the post-sentencing stage,[6] cites to a footnoted commentary from the *Porreca* Opinion to assert an opposite result is indicated. In the footnote in question, the *Porreca* Court, purportedly attempting to clarify the law on this matter, states:

> Hopefully, we end the confusion today by adopting the analysis of *Dickerson* that there is a difference between a plea bargain in which the defendant knows that the court may not honor a sentencing recommendation and one in which the defendant expects the recommendation to be honored. In the former case, the failure of the court to sentence according to the recommendation of the Commonwealth does not give rise to a defendant's right to withdraw the plea.

*Id.,* 595 A.2d at 26, n. 1.

¶ 12 It is upon that distinction the Commonwealth argues here that Appellant should not be permitted to withdraw his plea, alleging Appellant was aware the trial court may not respect the sentencing recommendation. Indeed, Appellant plainly recognized the fact Judge Jelin was not bound by the terms of the plea agreement. N.T. Plea Colloquy, 4/10/00, at 5. Yet, as noted above, the agreement between Appellant and the Commonwealth did not include a specific "waiver" provision and adoption of the Commonwealth's argument

---

**6.** Notably, at the hearing on Appellant's Post–Sentence Motion, ADA, Joel Rosen, joined in Appellant's motion to withdraw the plea and asserted his opinion that the court's rejection

of the sentencing recommendation entitled Appellant to withdraw the plea. N.T. Post–Sentence Motion Hearing, 6/28/00 at 37–38.

would seemingly require contravention of the Court's explicit "holding" in *Porreca*.

¶ 13 In reality, while the Court states that it was hopefully ending the confusion surrounding the right to withdraw a plea in the *Porreca* decision, the two passages quoted from that decision would appear to be at odds with one another, or, in the least, require some reconciliation. It is notable that of the two passages quoted above the one that comes across as the most authoritative and explicit is the passage cited by Appellant requiring written language waiving the right to withdraw the plea. Not only is this passage prefaced by the terms "we expressly adopt," and "hold," it is also set forth in the body of the Opinion. By its very language, this statement purports to be the Court's "holding." In contrast, the passage the Commonwealth quotes comes across as commentary and was set forth in a footnote. Forced to choose which of these passages to apply, and viewed from a perspective of case interpretation, we feel obligated to choose the passage set forth in the body of the Opinion purporting to be the Court's holding over the conflicting commentary set forth in a footnote. We also believe that this rule better serves concepts of fundamental fairness and the considerations underlying the plea bargaining process.

¶ 14 In consideration of all factors, the premise that a criminal defendant would be entitled to withdraw the plea if the judge does not go along with the recommendation seems in keeping with concepts of fundamental fairness. After all, when a criminal defendant pleads guilty to an offense he surrenders valuable rights. It is not unreasonable for the criminal defendant to derive benefit in exchange for the surrendering of his rights. The entrance of a plea agreement would naturally create a certain expectation in the defendant. While the court may not be bound by the terms of the agreement, rejection of the agreement clearly defeats the defendant's expectations and destroys the *quid pro quo* of the arrangement. Allowing the defendant to withdraw the plea under those circumstances simply restores the status quo. Of course, a defendant may voluntarily surrender this "right" to withdraw the plea, but given the positions of the parties and the significance of the right to withdraw when the expectation created by entering the bargain is defeated, it seems reasonable to require such a waiver or surrender to be done explicitly as opposed to occurring by default.

¶ 15 In contrast, understanding that the sentencing court is not bound by the terms of a plea agreement is one thing, while understanding that the court's rejection of the sentencing recommendation will leave the defendant without recourse is another. Merely apprising a defendant that the court is not bound by a sentencing recommendation does not also convey the notion that the plea is irrevocable. Moreover, such a rule tends to create an impression that the Commonwealth's side of the bargain is mostly an illusory promise, subject to the unpredictable assessment and approval of the sentencing court. Worse still, if the sentencing court exercises its discretion to reject the recommendation often enough, it could destroy the sense of an independent judiciary and create the impression that the court and the prosecutor are working in conjunction to deprive defendants of valuable rights. Once a plea is secured by the promise of a kind sentence recommendation, the criminal defendant would proceed only to find an unwilling jurist, yet the defendant is stuck with his plea, the anticipated sentence merely another unkept promise on his way to jail. This is not the ideal way to foster a sense of justice and fairness in the criminal justice system.

¶ 16 In light of the above we conclude the following: although not disclosed on the record, for reasons designed to benefit the Commonwealth, the plea agreement between Appellant and the Commonwealth contained a sentence recommendation. The sentencing court later rejected that recommendation. Appellant never expressly waived his "right" to withdraw his plea in the event the court rejected the Commonwealth's sentence recommendation. Thus, under *Porreca*, Appellant was entitled to withdraw his plea. As such, the court erred in denying Appellant's motion to withdraw plea and post-sentence motion.[7] Accordingly, we vacate the judgment of sentence and remand for a trial.

¶ 17 Judgment of sentence vacated, remanded for trial. Jurisdiction relinquished.

¶ 18 FORD ELLIOTT, J., Concurs in the Result.

¶ 19 BECK, J., files a Concurring Opinion.

BECK, J., concurring:

¶ 1 Because I agree that appellant is entitled to withdraw his guilty plea, I join the majority. In my opinion, if the record reveals that plea negotiations included terms, conditions, agreements and/or information in excess of that which was made part of the record, there is a presumption that the plea may be tainted. Such cases deserve our careful scrutiny. The integrity of the entire guilty plea process is at risk if we fail to invalidate pleas like the one in this case.

---

7. Due to our conclusion as to this issue, it is unnecessary for us to address Appellant's contention that plea counsel was ineffective for failing to secure a written plea agreement.

Additionally, Appellant's challenge to the discretionary aspects of sentencing is mooted by our decision today.