## Commonwealth v. Marino, Appellant, et al.

Argued October 8, 1940.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

B. D. *Oliensis*, with him *David A. Kraftsow*, for appellant.

*Raymond A. Speiser*, Assistant District Attorney, with him *Charles F. Kelley*, District Attorney, for appellee.

OPINION BY KELLER, P. J., November 20, 1940:

The disposition of this appeal requires consideration of the Act of June 5, 1937, P. L. 1703, entitled "An act relating to criminal prosecutions; limiting the effect of demurrers by defendants at the close of the cases of the Commonwealth." The act is printed in the margin.[1]

Before the passage of this act, when a defendant demurred to the evidence at the close of the Commonwealth's case, it did not become effective unless the

---

[1] "Be it enacted, &c., That hereafter in all criminal prosecutions, the action of the defendant at the close of the Commonwealth's case in demurring to the evidence submitted by the Commonwealth, shall not be deemed to be an admission of the facts which the evidence tends to prove or the inferences reasonably deductible [deducible] therefrom except for the purpose of deciding upon such demurrer, and if the court shall decide against the defendant on such demurrer, such decision shall be deemed interlocutory only, and the case shall proceed as if such demurrer had not been made."

Commonwealth joined in the demurrer, either expressly [2] or tacitly, by necessary implication.[3]

If joined in by the Commonwealth, the effect of the demurrer was to admit the facts proved by the Commonwealth and the inferences reasonably deducible therefrom; and it thereupon became the duty of the trial judge to discharge the jury and decide whether upon the facts and the inferences reasonably deducible therefrom, thus admitted by the defendant, he was guilty of the crime charged in the indictment, and to enter judgment accordingly. If the facts and inferences therefrom thus admitted did not support a finding of guilty and judgment thereon, it was his duty to sustain the demurrer and discharge the defendant. On the other hand, if they did, it was his duty to declare the defendant guilty and pronounce sentence. This was the practice established by many decisions.[4]

The enactment of the Act of 1937, supra, took away from the effect of the demurrer to the evidence any admission by the defendant of the facts in evidence and of the inferences reasonably deducible therefrom, except for the purpose of deciding upon the demurrer, and limited its practical effect to something very similar to a motion for a non-suit in a civil action, except that the judgment entered on the demurrer, if sustained, is a discharge, and bars a second prosecution for the same cause; but, if overruled, the defendant is entitled to go ahead with his case just as if the demurrer had not been entered. The necessary results *impliedly* flowing from the enactment of the statute, although not *expressly* attached to it are, (1) the joinder of the Commonwealth in the demurrer is no longer necessary; and

---

[2] *Com. v. Parr,* 5 W. & S. 345, 346.

[3] *Com. v. Smith,* 97 Pa. Superior Ct. 157, 158.

[4] *Com. v. Parr,* 5 W. & S. 345, 346; *Hutchison v. Com.,* 82 Pa. 472; *Com. v. Williams,* 71 Pa. Superior Ct. 311; *Com. v. Ernesto,* 93 Pa. Superior Ct. 339, 341; *Com. v. Smith,* 97 Pa. Superior Ct. 157, 158; *Com. v. Kolsky,* 100 Pa. Superior Ct. 596.

(2) the court is *required* to pass upon and dispose of the demurrer; it may not refuse to entertain it. And (3) the statute expressly declares that if the court decide against the demurrer, "such decision shall be deemed interlocutory only, and the case shall proceed as if such demurrer had not been made." In other words, the decision is not appealable, nor assignable as error, until final judgment is entered against defendant on a verdict of guilty. (*Com. v. Smith,* 135 Pa. Superior Ct. 174, 177, 5 A. 2d 383).

As we said, in the last named case, p. 177, "It [the statute] gives the defendant the chance to demur to the evidence without running the risk of being adjudged guilty by the Court, but it makes the decision overruling the demurrer interlocutory and not subject to appeal until final judgment is entered."

But an appeal may *then* be taken from the judgment of sentence, and if the decision overruling the demurrer was erroneous and the demurrer should have been sustained, the judgment will be reversed and the defendant discharged, unless the evidence produced by the defendant in his own behalf, or the rebuttal thereto by the Commonwealth, in connection with the evidence in the case when the demurrer was entered, will support the verdict of guilty.

While in the present case the court "declined to entertain" the defendant's demurrer to the evidence, (p. 14a), the legal effect was a decision against the demurrer, and we will so consider it. A formal exception to the decision was not necessary under section 6 of the Act of May 11, 1911, P. L. 279.

Appellant and one Frank Mongo were jointly indicted on the charge of setting up an illegal lottery, by way of the Numbers game—see *Com. v. Banks,* 98 Pa. Superior Ct. 432. The only proof offered in support of the charge was that of two officers that on or about the day fixed in the indictment, at about 1:45 o'clock p.m. they saw this appellant, Thomas Marino,

riding in a Buick coupe alongside of his co-defendant, Mongo, who was driving; that the latter stopped the car and went into a house at 63d and Paschall Avenue, Philadelphia, which they were watching, expecting, as they said, an automobile to come and pick up numbers slips. Mongo came out of the house, got into the car and drove a distance of four or five houses from the corner when they stopped him and found under the front seat thirty-six numbers slips with a total of 1504 plays. Each of the slips had in its upper left hand corner, the mark 'K. 25', which, they said, indicated the individual identifying number of the 'writer'; but it did not serve to identify the 'writer' to the officers. The automobile, it was testified by the officers, did not belong to either defendant.

Marino testified in his own defense that he got into the automobile at 71st and Elmwood Avenue—in front of the General Electric plant, where he had gone to try to get a job; that seeing Mongo, whom he had known for seven years, coming in Elmwood Avenue in the automobile, he "asked him if he was going down into town. He said yes; so [he] got in with him." He testified that he did not go into the house at 63d and Paschall Avenue, or any other house, did not leave the automobile, and had no knowledge of nor anything to do with the slips found by the officers under the front seat. He said Mongo had told him he was going to see a friend of his, when he stopped for a minute at the house.

Mongo testified that the automobile belonged to one Rose Marie Kresko, a friend of his residing at 1334 Shunk Street, who had lent it to him that morning about 10:00 or 11:00 o'clock; that he picked up Marino at the corner of 71st and Elmwood Avenue and had stopped on 63d Street right below Paschall Avenue to see a friend of his named John, but the friend wasn't in and he came right back; that he knew nothing about the numbers slips; that they had not been received by

him or put in the car by him. He corroborated Marino as to where and how he had picked up the latter. The Commonwealth produced no evidence rebutting Mongo's testimony as to the ownership of the car—the officers knew the number on the license plates and testified the car did not belong to either of the defendants. Nor was the testimony of both defendants as to when and where Marino got into the car denied by any witness for the Commonwealth.

The jury rendered a verdict of guilty against both defendants. Marino alone appealed. His sentence was for a year; Mongo's was for sixty days.

The evidence against Marino was wholly circumstantial. Judged by the standard approved by this Court in *Com. v. Byers,* 45 Pa. Superior Ct. 37, 38, and followed in many decisions of this Court and the Supreme Court, it was utterly insufficient to sustain a conviction of this appellant.

The rule by which the probative value of circumstantial evidence is to be measured, approved in the Byers case was: "When a crime charged is sought to be sustained *wholly* by circumstantial evidence, the hypothesis of guilt or delinquency should flow naturally from the facts and circumstances proved, and be consistent with them all. The evidence of facts and circumstances must be such as to exclude to a moral certainty, every hypothesis but that of guilt of the offense imputed, or in other words the facts and circumstances must not only all be consistent with and point to the guilt of the accused, but they must be inconsistent with his innocence." We venture, with some diffidence, to suggest that strictly applied this rule places too heavy a burden on the Commonwealth, in that it requires that where the evidence is wholly circumstantial the jury must be satisfied of the guilt of the accused beyond *any* doubt, rather than beyond a *reasonable* doubt, and is

a departure from the long settled principles of the criminal law. Circumstantial evidence is competent evidence and in some cases it may be more convincing than direct evidence, especially where the witnesses testifying to the latter are not deemed wholly credible.

We respectfully suggest, bearing in mind the natural disposition of jurors to entertain a reasonable doubt of the accused's guilt more readily where the evidence is wholly circumstantial than where it is accompanied by direct evidence of guilt, that the rule might well be modified, with fairness to both the Commonwealth and the accused, so as to read: When a crime charged is sought to be sustained wholly by circumstantial evidence the circumstances proved should be such as reasonably and naturally to justify an inference of the guilt of the accused, and should be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt.

Judged by this standard, likewise, the evidence was insufficient to sustain the conviction of the appellant. The proof in volume and quality was not sufficient to overcome the presumption of innocence and put appellant to a defense; and the rule is that where such is the case it is the duty of the trial judge to discharge him: *Com. v. Byers,* supra, p. 39.

The mere fact that appellant was riding with the other defendant in a car belonging to a friend of the latter's, was no evidence of his complicity in the numbers game. If Mongo got the slips at 63d and Paschall Avenue, that of itself would not incriminate Marino, nor would their presence in the car do so, unless accompanied by evidence that Marino had them in his possession or had placed them under the seat. On the other hand, if Mongo did not get the slips at 63d and Paschall Avenue, their presence under the seat could

not fairly be laid at Marino's door simply because he rode in the car with Mongo for five or six blocks before Mongo stopped the car and went into the house.

Marino may be a gambler and he may be interested in conducting a numbers lottery, but the evidence in this case wholly failed to prove it by that sufficiency in volume and quality which is necessary to overcome the presumption of innocence. There is not one circumstance in the testimony against Marino which is not entirely consistent with his innocence.

It is important that offenders against our criminal laws be punished, when their guilt is proved by sufficient, competent evidence; but it is more important that no one should be convicted of crime on evidence insufficient to sustain his conviction.

The first and second assignments of error are sustained. The judgment is reversed and the appellant discharged.