Commonwealth *v.* Cerzullo et al.
Agostino Appeal.

Argued March 8, 1954. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Walter H. Compton,* with him *H. Joseph Hepford,* for appellant.

*Huette F. Dowling,* District Attorney, for appellee.

OPINION BY ERVIN, J., April 15, 1954:

The defendant, Joseph Agostino, was convicted and sentenced on a charge of occupying premises with books, apparatus or paraphernalia for the purpose of pool selling, in violation of the Act of June 24, 1939, P. L. 872, 18 PS 4607. On November 7, 1952, at about 4:40 P.M., state, county and city police officers conducted a raid on 638 Harris Street, Harrisburg, Pennsylvania. The building contained three rooms on the first floor, three rooms and bath on the second floor and two rooms on the third floor. The officers entered the premises by the rear kitchen door, which was unlocked. The first floor was furnished but empty. The officers proceeded upstairs to the second floor, which was also furnished but unoccupied. They started up the stairs to the third floor when they saw the defendant, Joseph Agostino, walk toward the back of the house in the hallway and pick up a telephone. When the officers started up the stairs Agostino put down the receiver and ran into the back room and closed the door. The third floor consisted of two rooms about ten by twelve feet in area, one in the front and one in the rear, connected by a closed hallway. One of the officers tried the door of the rear room into which Agostino had fled but not being able to open it, he kicked it in and grabbed Joe and took him to the front room. Another officer had gone directly to the front room wherein he found defendants Cerzullo and Matinchek seated at a table on which there were $1,044.23 in various denominations and 2297 numbers slips. Some of the money had already been wrapped in coin wrapping paper and some of it had been segregated in various denominations. The room also contained three adding machines, steel boxes, money folders, pencils, rubber bands, paper clips, money bags, and other paraphernalia used in the

numbers game. On Joseph Agostino's person were found in his right pants' pocket $160.00 in twenty-dollar bills, $140.00 in five-dollar bills; in his right hip pocket were found a twenty-dollar bill, twelve ten-dollar bills and eleven five-dollar bills; in his jacket pocket, one hundred-dollar bill, one fifty-dollar bill, two ten-dollar bills, one five, one two and five ones, together with some slips containing numbers. One of the slips of paper found on Joseph Agostino's person was a piece of adding machine tape with the pencil notation 338 R and 908 S. Detectives who had qualified as experts testified that the winning stock number for November 6, the day before, was 908, and that the slips and other gambling articles found on the premises and on the defendant's person were paraphernalia used in the operation of the numbers game. They also testified to the entire manner of carrying on the game and stated that 638 Harris St. was what is known as a numbers bank.

Prior to November 7, 1952 638 Harris St. had been under surveillance by the State Police. They testified that they had watched the premises since October 28, 1952 and had seen the three defendants enter and leave the premises on every day from the 28th to the day of the raid, excepting Sunday and Election Day. Agostino was seen leaving the premises on October 28, 29, 30, 31 and November 1, 3, 5 and 6. On November 5 he was seen to park a black Cadillac at 7th and Harris Streets and walk up the alley and enter the rear of 638 Harris Street at 4:25 P.M. He did not leave the premises until 5:15. On November 6 he entered in the same manner at 4:17 P.M. and did not leave until 5:16 P.M. On the day of the raid he entered at 4:31 P.M. and the officers entered the premises at approximately 4:40 P.M. At the end of the Commonwealth's case the defendant demurred. After the demurrer was overruled, Anthony Matinchek changed his plea to

guilty and then took the stand in behalf of the other two defendants, Adolf Cerzullo and Joseph Agostino. In his testimony he admitted that a numbers bank was being operated at 638 Harris Street on the day of the raid and that he had been operating it since October 26. He admitted renting the front room and stated that he owned all of the paraphernalia in that room and that the entire operation was his. He stated that Adolf Cerzullo was working for him. He also stated that he had borrowed some money from Joseph Agostino in September 1950; that Agostino would drop around to collect the payments on it; that he left the rear door open for Agostino; that Agostino usually stayed downstairs and called up to him but that he may have come up to the third floor once before the day of the raid. He also stated that Agostino was in the room on the day of the raid and that he was on his way out when the police came in.

The principal contention of the appellant is that the evidence was not sufficient to sustain the conviction under the circumstantial evidence rule. He states the rule as follows, citing *Com. v. Byers,* 45 Pa. Superior Ct. 37, as his authority: " ' when a crime charged is sought to be sustained wholly by circumstantial evidence, the hypothesis of guilt or delinquency should flow naturally from the facts and circumstances proved, and be consistent with them all. The evidence of facts and circumstances must be such as to exclude to a moral certainty, every hypothesis but that of guilt of the offense imputed, or in other words the facts and circumstances must not only all be consistent with and point to the guilt of the accused, but they must be inconsistent with his innocence.' " This is not a correct statement of the circumstantial evidence rule as applied in criminal cases in Pennsylvania today. We thought this ghost had been laid low by a great number of recent decisions. Apparently we were mistaken.

So that there may be no further misunderstanding we restate the rule as follows: "The requirement of the law is that in order to warrant a conviction the facts and circumstances proved must be of such character as to produce a moral certainty of the guilt of the accused beyond any reasonable doubt—not that they need be absolutely incompatible with his innocence—and that doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances'."[1]

In our opinion the evidence was sufficient to submit to the jury. There was testimony that Joseph Agostino had been in the front room of the third floor which contained the gambling paraphernalia just before the officers reached the third floor. Appellant argues that the testimony of Anthony Matinchek may not be used against the defendant, Joseph Agostino. The lower court was clearly right in considering this evidence. See *Com. v. Marino,* 142 Pa. Superior Ct. 327, at page 331, 16 A. 2d 314, where President Judge KELLER said: "But an appeal may then be taken from the judgment of sentence, and if the decision overruling the demurrer was erroneous and the demurrer should have been sustained, the judgment will be reversed and the defendant discharged, unless the evi-

---

[1] *Com. v. Libonati,* 346 Pa. 504, 508, 31 A. 2d 95; *Com. v. Holt,* 350 Pa. 375, 387, 39 A. 2d 372; *Com. v. Bausewine,* 354 Pa. 35, 41, 46 A. 2d 491; *Com. v. New,* 354 Pa. 188, 194, 47 A. 2d 450; *Com. v. Wentzel,* 360 Pa. 137, 143, 61 A. 2d 309; *Com. v. Linkowski,* 363 Pa. 420, 423, 70 A. 2d 278; *Com. v. Carey,* 368 Pa. 157, 163, 82 A. 2d 240; *Com. v. Marino,* 142 Pa. Superior Ct. 327, 333, 16 A. 2d 314; *Com. v. Meyers,* 154 Pa. Superior Ct. 8, 11, 34 A. 2d 916; *Com. v. De Petro,* 154 Pa. Superior Ct. 535, 543, 36 A. 2d 513; *Com. v. Prezioso,* 157 Pa. Superior Ct. 80, 86, 41 A. 2d 350; *Com. v. Wojdakowski,* 161 Pa. Superior Ct. 250, 257, 53 A. 2d 851; *Com. v. Margie,* 165 Pa. Superior Ct. 84, 88, 89, 68 A. 2d 194; *Com. v. Grosso,* 169 Pa. Superior Ct. 606, 610, 84 A. 2d 239.

dence produced by the defendant in his own behalf, or the rebuttal thereto by the Commonwealth, in connection with the evidence in the case when the demurrer was entered, will support the verdict of guilty." The witness, Anthony Matinchek, was called by Agostino's attorney. It is true that he stated he would like to call him as a witness on behalf of his client, Adolf Cerzullo. The record states, however, that he was called as "a witness on behalf of the defendants." One of the principal reasons why Matinchek was called was to show the reason for Agostino's presence. He testified that Agostino came to the premises to collect a loan from him, Matinchek. This clearly made him a witness for Agostino and Mr. Hepford, attorney for appellant, further interrogated the witness as follows: "Q. Where was he the day of the raid? A. He was in the room on the day of the raid and I was busy at the time and he had called. I didn't hear him and he came up and I had paid him and he was on his way out when the police came in." We therefore have direct evidence by one of defendant's own witnesses that he had been in the room containing all of the gambling paraphernalia just prior to the time when the officers entered that room. The witness Matinchek also stated that he had rented the room, that all of the material in the room belonged to him and that the paraphernalia in the room was being used to operate a numbers bank. The type of charge on which this defendant was convicted must be kept in mind. It was charged that defendant occupied a place with books, apparatus or paraphernalia for the purpose of pool selling. There is direct evidence given by defendant's own witness that this room was occupied with paraphernalia for the purpose of pool selling, and that the defendant had been in that room just prior to the entry of the officers. The learned court below, in its opinion, set forth the circumstances it considered of sufficient probative value to sustain the de-

fendant's conviction, as follows: 1. His presence at the premises on previous days. 2. His presence at the scene on the day of the raid. 3. His flight in apprehension in an effort to conceal himself. 4. Extensive paraphernalia and apparatus pertaining to the numbers business. 5. The admission of Matinchek and Cerzullo that they (Matinchek and Cerzullo) were engaged in the numbers business. 6. The lucky numbers in the "stock" and "race" pools found on the person of Agostino, referred to in the testimony for the "number for the day" and in the argument as a "hit." 7. The paraphernalia in the form of adding machine tape and money in the various denominations found on Agostino's person.

It is probably true that any one of these circumstances would not have been sufficient but taken together they are sufficient: *Com. v. Stoe*, 167 Pa. Superior Ct. 300, 74 A. 2d 526; *Com. v. Giacobbe*, 341 Pa. 187, 192, 19 A. 2d 71.

When a crime has been committed, and the person accused thereof knows he is accused and then flees or conceals himself, such conduct is evidence of consciousness of guilt and, in connection with other proof, may be the basis from which guilt may be inferred.[1]

The fact that the defendant Agostino was using the telephone when the officers were ascending the stairs and that he dropped the phone and ran to the rear room and locked himself in the room, thereby making it necessary for the officers to kick in the door in order to apprehend him, is a strong circumstance in this

---

[1] *Com. v. McMahon*, 145 Pa. 413, 22 A. 971; *Com. v. Boschino*, 176 Pa. 103, 115, 34 A. 964; *Com. v. Luccitti*, 295 Pa. 190, 198, 145 A. 85; *Com. v. Del Giorno*, 303 Pa. 509, 518, 154 A. 786; *Com. v. Grazziani*, 86 Pa. Superior Ct. 571, 574; *Com. v. Myers*, 131 Pa. Superior Ct. 258, 265, 200 A. 143; *Com. v. Liebowitz*, 143 Pa. Superior Ct. 75, 83, 17 A. 2d 719; *Com. v. Fusci*, 153 Pa. Superior Ct. 617, 620, 35 A. 2d 93.

case. If the defendant were present merely to collect a debt, would he have thus endeavored to conceal himself? What would he have had to hide? In none of the cases cited by appellant did the defendant flee and hide himself when the officers were endeavoring to apprehend him. The fact that he had been seen leaving the premises every day from the 28th of October down to the day of the raid on November 7, excepting Sunday and Election Day, is of considerable importance. The fact that on the day before, November 6, he entered the premises at 4:17 P.M. and did not leave until 5:16 is an important circumstance. Why would a man remain in the premises for a whole hour if he came merely to collect a small sum of money on account of a debt? The fact that he had a large sum of money on his person in itself would not be sufficient but the large sum and its distribution in his various pockets is of some significance when considered with all the other facts. The fact that he had the hit number of the day on a piece of paper in his pocket is of some significance. It is also a well known fact that when two or more are indicted in a gambling transaction, one will often plead guilty and endeavor to exculpate the others. In common parlance, this is what is known as "taking the rap" for another.

The defendant is not entitled to a new trial in this case.

The order is affirmed and the defendant is directed to appear in the court below at such time as he may be there called, and it is ordered that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal was made a supersedeas.