Commonwealth *v.* Terenda, Appellant.

520

Argued March 20, 1969. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Thomas H. Cauley,* for appellant.

*Thomas E. Maloney,* Assistant District Attorney, with him *Charles B. Watkins* and *Carol Mary Los,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, April 23, 1969:

This is a direct appeal from a Judgment of sentence entered after the Court en banc dismissed defendant's motion in arrest of judgment and for a new trial.

Appellant was found guilty of voluntary manslaughter by a jury and was sentenced to from six to twelve years for the killing of Danny Dittler on January 1, 1968, in the Beachview section of the City of Pittsburgh. Throughout the proceedings, appellant was represented by private counsel.

It is essential that the facts leading up to the death of Danny Dittler be stated in some detail. At approximately 9:30 P.M., on December 31, 1967, appellant Terenda, in the company of Roland J. Bellan and George E. Johnson, went to the home of Jane Brewer for the alleged purpose of attending a party. Although this is disputed, appellant claims that they were invited to the party. Admission to the party was at first denied, but they were eventually allowed to enter the Brewer home. While at the party, appellant struck Wally Maiers, an invited guest, with an object described as a gearshift handle. Appellant apparently mistook Maiers as being Frank Kaminsky, who had previously had an altercation with appellant.

Frank Kaminsky, who had earlier left the Brewer party, was informed that appellant and his friends were looking for him, and as a result sought the aid of his brother Joe Kaminsky. Joe Kaminsky telephoned Joseph Sarnowski, who agreed to help Frank Kaminsky. Sarnowski went to the home of Billy Tague, who was at that time playing cards with some friends at Tague's home. Joe Kaminsky, Sarnowski, Billy Tague and his friends met at a restaurant, and while there noticed a red and white camper drive past which was similar to the one in which Frank Kamin-

sky had previously seen appellant and his friends that evening. Kaminsky and his friends overtook the camper and a fight ensued.

After the fight ended, Frank Kaminsky, Joe Sarnowski and their friends returned to the Sarnowski residence where they joined other couples who had been invited to a last-minute New Year's Eve party. Appellant, Bellan and Johnson returned to the Brewer home where they questioned some people regarding the whereabouts of Frank Kaminsky. Receiving unsatisfactory answers, they returned to the camper and forced Thomas Graziani, who was leaving the Brewer party, to accompany them in their search for Frank Kaminsky. Appellant and his companions drove to the Kaminsky residence. After being informed that Frank Kaminsky was not at home, one of the three stated to Kaminsky's mother, "It's a good thing he isn't home, because I'm going to kill him." After cruising around for some time, Graziani advised them to try the Sarnowski residence in their attempt to find Kaminsky. Graziani testified that he did not think anyone was home at the Sarnowski residence, and hoped that they would allow him to return home. Upon their arrival at the Sarnowski residence, Johnson and Bellan got out of the camper with their guns and proceeded up the front steps and into the Sarnowski residence. Appellant Terenda remained in the camper with Graziani. Shortly thereafter, a fight erupted and appellant got out of the camper with his rifle, walked to the terrace, raised his rifle to firing position, and discharged the rifle. Danny Dittler, an innocent bystander, was shot and killed by one bullet. Three Commonwealth witnesses, Graziani among them, testified that one shot was fired and that a flash appeared from appellant's rifle.

Motion in Arrest of Judgment

Appellant maintains that the evidence produced by the Commonwealth, both direct and circumstantial, was insufficient to establish appellant's guilt. Before considering appellant's contentions, we shall state the appropriate legal standards for a motion in arrest of judgment. In *Commonwealth v. Kravitz*, 400 Pa. 198, 201, 161 A. 2d 861, the Court said: "The test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial—is whether accepting as true all the evidence upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged . . . . [and cases cited therein]."

In *Commonwealth v. Tabb*, 417 Pa. 13, 207 A. 2d 884, the Court said (page 16) : "In passing upon such a motion [in arrest of judgment], the sufficiency of the evidence must be evaluated upon the *entire trial record*.\* All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove. See, Commonwealth v. Moore, 398 Pa. 198, 157 A. 2d 65 (1959), and Commonwealth v. Wright, 383 Pa. 532, 119 A. 2d 492 (1956). Also, in passing upon such a motion, all evidence actually received must be considered, whether the trial rulings thereon were right or wrong."

Appellant argues that the evidence was insufficient to prove that the bullet from the rifle he fired resulted in the victim's death. In support of this, appellant's expert witness, an engineer, testified that the terrace

---

\* Italics in original Opinion.

from which the rifle was fired was approximately eleven feet lower than the steps of the house, and that therefore the bullet upon entering the body should have followed an angular path rather than a horizontal path. Furthermore, appellant argues that the body of the deceased victim, upon being struck by the bullet, should have followed the path of the bullet into the house instead of falling in the direction of the front door. Appellant's last point is that Donald Roth, one of the guests at the party, also had a gun which was held by him in a horizontal position.

Appellant's expert witness further testified that a bullet's path upon entering the body can easily be altered, depending upon what type of substance obstructs the bullet's path—i.e., bone, hard tissue and muscular tissue could each or all have affected the bullet's path through the body. Therefore, little weight can be attached to the argument that the horizontal path of the bullet precludes the finding that appellant fired the fatal shot. Any number of things could have changed the path of the bullet, and for this reason the expert opinion is not convincing. Appellant's contention that a bullet fired from outside the house would cause the victim to fall backwards into the house is likewise without merit. The evidence elicited at trial indicates that a fight was ensuing at the time the rifle was fired and, therefore, the victim may not have been in a perfectly balanced position. Since there has been no showing that the victim was isolated from all other persons at the time of the shooting, the inference that a body follows the path of force has no application to this case. Furthermore, the testimony was unanimous that only one shot was fired and Donald Roth denied firing the rifle. Joseph Sarnowski testified that the rifle held by Roth was not loaded and that there was no ammunition in his house. None of the people in

the immediate area of the shooting testified that Donald Roth fired his rifle.

Our review of the record in this case establishes that the evidence taken in the light most favorable to the Commonwealth was amply sufficient to justify the jury's verdict, and therefore the motion in arrest of judgment is denied.

### Motion for a New Trial

Appellant alleges that four errors were committed by the trial Court, each of which justifies the granting of a new trial. The alleged errors may be summarized as follows: (1) the refusal by the lower Court to charge the jury that they may draw an unfavorable inference from the Commonwealth's failure to produce evidence of blood and tissue at the exact points struck by appellant's bullet; (2) the lower Court's denial of appellant's request for a charge allowing the jury to draw an unfavorable inference from the Commonwealth's failure to call a witness who, at the time of trial, was serving in the armed forces in Germany; (3) the admission into evidence of certain fibers found on the bullet fired from appellant's gun; and (4) the admission into evidence of muscular tissue scraped from a wall of the residence where the killing occurred.

We have reviewed the entire record and especially those parts pertaining to every one of appellant's various contentions, and find no merit in any of them.

Judgment of sentence affirmed.