353 A.2d 392
**COMMONWEALTH of Pennsylvania**
v.
**David Eugene SCOGGINS, Appellant.**

Supreme Court of Pennsylvania.
Submitted June 23, 1975.
Decided March 17, 1976.

Bruce S. Miller, Asst. Public Defender, Wilkes-Barre, for appellant.

Patrick J. Toole, Jr., Dist. Atty., Wilkes-Barre, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

On May 24, 1972, Alexander Edinger, an inmate at the Dallas State Correctional Institution, died of knife wounds inflicted by appellant, David Scoggins, another inmate of the institution. Appellant was charged with murder in the first degree and assault by a life prisoner.[1] After a trial by jury Scoggins was convicted of murder in the first degree [2] and sentenced to life imprison-

---

1. Scoggins was indicted under the Act of June 24, 1939, P.L. 872, § 710.2, 18 P.S. § 4710.2 which provides in pertinent part:

   "Every person who has been sentenced to imprisonment for life in any penal institution located in this Commonwealth, and whose sentence has not been commuted, who commits an assault with intent to kill upon another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, is guilty of a felony, and upon conviction thereof, shall be sentenced to suffer death in the manner provided by law, or to undergo imprisonment for life, at the discretion of the jury trying the case, which shall fix the penalty by its verdict."

2. After the jury returned a verdict of first degree murder, a poll of the jury revealed that the jurors had not deliberated on the charge of assault by a life prisoner. After a side-bar conference, the court ruled that "the charge of assault by life prisoner will be molded into the verdict rendered by the jury of first degree Murder."

ment. In this direct appeal,[3] appellant raises five allegations of error. We conclude that none of these claims is meritorious, and will affirm.

Appellant first challenges the sufficiency of the evidence to sustain his conviction. It is well settled that "[t]he test of sufficiency of evidence is whether, accepting as true all the evidence, together with all reasonable inferences therefrom, upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Clark*, 454 Pa. 329, 331, 311 A.2d 910, 911 (1973). See also *Commonwealth v. Green*, 464 Pa. 557, 565, 347 A.2d 682, 686 (1975); *Commonwealth v. Carbonetto*, 455 Pa. 93, 95, 314 A.2d 304, 305 (1974). When reviewed in this light, the record amply supports the jury's verdict.

On several occasions during the days preceding the slaying, and again at breakfast on the morning of the knifing, Edinger verbally insulted Scoggins in front of mutual acquaintances. Shortly after breakfast on the fatal day, Scoggins sought Edinger out in his cell and there stabbed him six times. Edinger, screaming, broke away from Scoggins and fled from the cell. Scoggins closely pursued him with a sharpened butter knife poised above his head. The victim found sanctuary in a control room where Scoggins was finally subdued by a prison guard and several inmates. Edinger died six days later as a result of these wounds.

Scoggins has never denied stabbing Edinger. Rather, his position at trial was that he did so in self-defense. He testified that he went to Edinger's cell at Edinger's request; that once he was in the cell Edinger subjected him to verbal abuse, pulled a knife from under a blanket and initiated an attack resulting in several cuts on Scoggins' arm; that Scoggins repelled this attack by a kick

3. This direct appeal is taken pursuant to Act of July 31, 1970, P.L. 673, § 202, 17 P.S. § 211.202(1).

which caused Edinger to drop the knife and fall to his knees; that Scoggins then seized the knife and when Edinger renewed his assault, this time by attempted strangulation, appellant stabbed Edinger six times in self-defense. This account was corroborated by the testimony of a fellow inmate, one James A. Murray, who was characterized by Scoggins as a "former partner".

To rebut this account the Commonwealth (1) called two witnesses who had examined Scoggins immediately after the affray and found no evidence of a knife wound on his arm or of strangulation marks around his neck; (2) produced evidence that tended to show that the victim had a crippled left arm and was physically incapable of the attack Scoggins described; (3) developed on cross-examination that Murray had also been involved in the attack on Edinger; and (4) introduced a statement given by Scoggins shortly after the incident which contradicted his testimony at trial in significant respects.

It is well settled that "[t]he jury [is] not obligated to believe appellant's exculpatory account of the circumstances surrounding his admitted killing . . . ." *Commonwealth v. Robson*, 461 Pa. 615, 628, 337 A.2d 573, 579 (1975); see also *Commonwealth v. Marlin*, 452 Pa. 380, 305 A.2d 14 (1973); *Commonwealth v. McIntyre*, 451 Pa. 42, 301 A.2d 832 (1973). In the instant case the jury could have reasonably decided to discount the testimony of the defense witnesses and could have concluded that when Scoggins wielded the knife against Edinger, he did so with a specific intent to kill. Both Scoggins' knife-wielding pursuit of Edinger, and the discrepancies in his story developed by the Commonwealth would amply support this conclusion. Accordingly, we find no merit in appellant's sufficiency of the evidence challenge.

█ Appellant next argues that the trial judge erred in (1) permitting the District Attorney to mention in his opening remarks that appellant had been previously con-

victed of murder in the first degree and was currently serving a life sentence therefor; and (2) permitting the Deputy Clerk of Court of Delaware County to testify as to the same facts. Appellant contends that the introduction of evidence of his prior unrelated criminal offenses was unduly prejudicial and therefore constituted reversible error.

It is well settled that "the prosecution may not introduce evidence of [a] defendant's prior criminal conduct as substantive evidence of his guilt of the present charge." [4] This rule recognizes "the tendency of a normal juror to accept testimony of prior convictions as a basis for finding a predisposition to commit the crime charged," *Commonwealth v. Bighum*, 452 Pa. 554, 566, 307 A.2d 255, 262 (1973), and thus excludes the use of prior convictions as substantive evidence of guilt. The evidence here involved, however, was not introduced for such a purpose.

Appellant was charged with assault by a life prisoner. The statute which sets forth this offense, requires, as a necessary element, a showing by the Commonwealth that the accused "has been sentenced to imprisonment for life." The necessary consequence of meeting this element is an exposure of the jury to the fact that the defendant had previously been convicted of a criminal act sufficiently heinous to warrant the imposition of a life sentence. Appellant does not challenge this exposure.[5] Instead, he argues that while evidence of his life sentence was properly admitted, the additional fact that the sentence was being served for a conviction of murder in the

---

4. *Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972); see also *Commonwealth v. King*, 455 Pa. 363, 316 A.2d 878 (1974); *Commonwealth v. Clark*, 453 Pa. 449, 309 A.2d 589 (1973); *Commonwealth v. Burdell*, 380 Pa. 43, 110 A.2d 193 (1955).

5. Appellant here raises no contention that the introduction of his prior convictions under the statute would constitute a denial of due process. Compare *Commonwealth v. Chapasco*, 436 Pa. 143, 258 A.2d 638 (1969).

first degree was not necessary to establish the statutory element and, therefore, should have been excluded by the trial judge.

While appellant is correct that the evidence to which objection was taken was error, we do not view its introduction into evidence as prejudicial error. We do not deal here with a situation where the challenged evidence alerts the jury to a prior criminal act of the accused. Rather, the evidence in question was presented to a jury *already* exposed to the fact that the defendant had been convicted of a crime of the most egregious sort. Since the jury was required to be furnished with this potentially prejudicial information, we fail to see how revelation of the nature of the offense giving rise to such conviction was anything but cumulative.[6] Because no additional prejudice would be likely to result, we conclude that the trial judge did not abuse his discretion in failing to exclude the evidence.

■ Appellant next argues that the trial judge erred in allowing into evidence the testimony of a priest, the Rev. Clement Podskoch. Specifically, defense counsel objected to the following portion of the clergyman's testimony as irrelevant and highly prejudicial:

"Q. Did you talk to Mr. Edinger?

A. Yes, I did.

Q. Did Mr. Edinger say anything to you, Father?

A. As soon as I approached the bed on which he was placed, he asked me, he said, very nervously, 'Father, am I going to die?'

Q. Did you respond?

A. I said, 'Alex, it's all in the hands of God. Let's pray.' "

---

**6.** The Commonwealth did not here attempt to establish the circumstances surrounding defendant's prior crime. Had they done so this would clearly be a different case.

Taken in context, the above-quoted testimony was elicited to lay the foundation for the admission of a purported dying declaration made by Edinger to the priest.[7] For this purpose the testimony was relevant to establish a fear of impending death, and was, therefore, properly admitted. See, e. g., *Commonwealth v. Cooley*, 465 Pa. 35, 348 A.2d 103 (1975).

■ Next appellant alleges that the trial court erred in admitting three photographs of the victim—one taken when Edinger was born; one taken when he was four years old; and one taken a few years before his death. The photographs were introduced to corroborate testimony that the victim had a claw left arm and was, therefore, physically incapable of having attacked appellant in the manner appellant testified to. For this purpose the photographs were clearly relevant, useful evidence. Appellant's objection to their introduction was properly overruled.

■■ Appellant contends, lastly, that the trial judge erred in admitting into evidence the alleged murder weapon because the Commonwealth failed to establish a complete chain of custody or to establish beyond a reasonable doubt that the knife was indeed the weapon used

---

7. The testimony that immediately followed the objected to testimony was as follows:
"Q. And, did he then pray with you, Father?
A. Yes, he did.
Q. And, after you concluded your prayer, did you have any opportunity of talking to Alexander Edinger?
A. Yes, I did.
Q. And did you ask him anything?
A. Well, he seemed to calm down a bit after I prayed with him for some while. Of course, others were still present in the room working on him, giving him emergency treatment and I said, 'What happened, Alex?' And . . .
Q. Did he respond to that Question?
A. Yes, he did.
Q. Can you give me that response to this Court and jury?
A. Yes, he said, 'Scoggins hit me.'
Q. Scoggins?
A. Yes."

in the slaying. Appellant's argument, however, misperceives the rule that governs the admissibility of an alleged murder weapon in this Commonwealth. Positive testimony that the weapon in question is the actual murder weapon is not required prior to its introduction into evidence; rather, the Commonwealth need only lay a sufficient foundation to justify an inference of the weapon's use in the course of the crime. *Commonwealth v. Ford,* 451 Pa. 81, 301 A.2d 856 (1973). Here such a foundation was laid; the knife in question was identified as the murder weapon by at least two eyewitnesses; it was discovered in the yard outside a nearby cell shortly after the knifing; and, when discovered the knife was covered with fresh blood of the same type as that of the victim. Taking this evidence as a whole, we conclude that an adequate foundation was laid for the introduction of the knife.

The judgment of sentence is affirmed.