386 A.2d 500

**COMMONWEALTH of Pennsylvania**

v.

**Constance DUSSINGER, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Nov. 18, 1977.

Decided April 28, 1978.

Rehearing Denied June 2, 1978.

184

Alan M. Lerner, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Michael R. Stiles, Asst. Dist. Atty., Chief, Appeals Div., Gaele McLaughlin Barthold, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, Constance Dussinger, also known as Constance Kelley, was tried by a judge and jury and was convicted of two counts of murder of the second degree, robbery, and criminal conspiracy. Post-verdict motions were denied and appellant was sentenced to two concurrent terms of life imprisonment. Sentence was suspended on the robbery and conspiracy convictions. The homicide convictions were appealed directly to this court, while the non-homicide convictions were appealed to Superior Court, which certified those appeals to this court.

The facts are as follows. On July 3, 1974, the partially decomposed bodies of Willie Billingsley and Ernest Barnes were discovered in Billingsley's Philadelphia residence. Both victims died of gunshot wounds to the head. The

medical examiner found it impossible to accurately determine the times of death, but he estimated that both deaths occurred between 6:00 a. m. on Monday, July 1, 1974 and 6:00 p. m. on Tuesday, July 2, 1974.

During their investigation, police discovered that Billingsley held at his residence Monday-night poker games involving large sums of money. Police discovered that a game was held on July 1, 1974, two days before the bodies were discovered. Investigation further revealed that Billingsley, during the week prior to his death, had "hit a number" for well over one thousand dollars. Despite the foregoing facts, no money was found on either of the victims or in the house. Further, when Billingsley's body was discovered, the pockets of his trousers were pulled out and a large glass bank was broken into two pieces.

During their investigation, the police found that appellant had been employed by Billingsley to serve food and drinks at his weekly poker games. She was originally questioned concerning Billingsley's background; however, she subsequently gave police an inculpatory statement. According to appellant, in late June of 1974, a co-defendant, Ervin Warren, had stolen approximately $1,500 worth of payroll checks. Warren gave the checks to appellant, who gave them to Billingsley. Warren later decided to cash the checks himself and told appellant to get the checks back. When appellant forgot to get the checks, Warren, appellant and co-defendant Charles Jackson went to Billingsley's home to recover the checks. Appellant knew both the purpose of the trip and that both of her companions had guns.

Once inside the Billingsley residence, Jackson handed appellant a gun and instructed her to keep it pointed at Barnes, who was sleeping on a couch. Warren and Jackson then accompanied Billingsley to the upper floor of the house. Appellant stated that five minutes later she heard two or three shots from upstairs, which startled her, causing the gun she was holding to accidentally discharge, killing Barnes. Appellant stated that she then fled the premises and returned home.

■ Appellant first argues that the trial court erred in refusing her demurrer to the conspiracy and robbery indictments. She argues that since she neither took anything nor intended to participate in a robbery, the charges of conspiracy and robbery should not have been submitted to the jury.

The issue as presented to this Court is not properly preserved for appellate review.

In *Commonwealth v. Ilgenfritz,* 466 Pa. 345, 353 A.2d 387 (1976), stated:

> "The Appellant frames this question in terms of whether the trial court erred in not sustaining his demurrer to the evidence for lack of proof of cause of death. Since, however, the defendant did not rest following this adverse ruling, but elected to put in a case in defense, the correctness of the ruling on the demurrer is no longer an available issue. See *Commonwealth v. Moore,* 398 Pa. 198, 201–202, 157 A.2d 65 (1959); *Commonwealth v. Spanos,* 167 Pa.Super. 629, 631, 76 A.2d 243 (1950). But see *Commonwealth v. Henderson,* 451 Pa. 452, 304 A.2d 154 (1973). We have chosen, nevertheless, to treat the question as if properly framed, namely, whether the trial court erred in refusing defendant's motion in arrest of judgment. In doing so, of course, we consider all of the evidence at trial, not only that contained in the Commonwealth's case in chief. See *Commonwealth v. Terenda,* 433 Pa. 519, 252 A.2d 635 (1969); *Commonwealth v. Tabb,* 417 Pa. 13, 207 A.2d 884 (1965); *Commonwealth v. Moore, supra; Commonwealth v. Kohne,* 204 Pa.Super. 78, 203 A.2d 401 (1964); *Commonwealth v. Gomori,* 192 Pa.Super. 325, 161 A.2d 649 (1960); *Commonwealth v. Cerzullo,* 175 Pa.Super. 330, 104 A.2d 179 (1954)."

The appellant in the instant case, presented a defense. Therefore as in *Ilgenfritz, supra* we will treat her challenge as one to the sufficiency of the evidence rather than one challenging the correctness of the trial court's rulings on the demurrers.

■ In *Commonwealth v. Rose,* 463 Pa. 264, 344 A.2d 824 (1975), we stated:

"The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime had been established beyond a reasonable doubt. *Commonwealth v. Robson,* 461 Pa. 615, 625, 337 A.2d 573, 578 (1975); *Commonwealth v. Boyd,* 461 Pa. 17, 24, 334 A.2d 610, 613 (1975); *Commonwealth v. Murray,* 460 Pa. 605, 608, 334 A.2d 255, 257 (1975). Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *Commonwealth v. Robson, supra; Commonwealth v. Murray, supra; Commonwealth v. Smith,* 457 Pa. 638, 326 A.2d 60, 61 (1974); *Commonwealth v. Paquette,* 451 Pa. 250, 257, 301 A.2d 837, 841 (1973). The fact-finder is free to believe all, part, or none of the evidence. *Commonwealth v. Robson, supra; Commonwealth v. Smith, supra."*

A review of the evidence in light of this standard makes clear that sufficient evidence is in record to sustain appellant's convictions for conspiracy and robbery.

In *Commonwealth v. Mobley,* 467 Pa. 460, 463, 359 A.2d 367, 368 (1976), we stated:

" . . . It is well-established that a conspiracy may be proved by circumstantial evidence as well as by direct evidence. *Commonwealth v. Eiland,* 450 Pa. 566, 570, 301 A.2d 651, 652 (1973); *Commonwealth v. Batley,* 436 Pa. 377, 392, 260 A.2d 793, 801 (1970); *Commonwealth v. Yobbagy,* 410 Pa. 172, 177, 188 A.2d 750, 752 (1963). 'Although more than a mere association must be shown, " '[a] conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the relation, conduct, or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed: . . . ' " ' *Commonwealth v. Eiland, supra; Commonwealth v. Neff,* 407 Pa. 1, 6, 179 A.2d 630, 632 (1962); *Commonwealth v. Horvath,* 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958)."

In the instant case, appellant knew that her co-defendants intended to recover the stolen checks, even if the use of the handguns was necessary. Despite this, appellant went along with the pair and helped them gain entrance into the victim's home. From this evidence, it is reasonable to infer that appellant agreed with her co-defendants to rob the victim.

The same holds true for the charge of robbery. The Crimes Code provides:

"(a) General rule.—*A person is guilty of an offense if it is committed* by his own conduct or *by the conduct of another person for which he is legally accountable,* or both.

"(b) Conduct of another.—*A person is legally accountable for the conduct of another person when:*

"(1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;

"(2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or

"(3) *he is an accomplice of such other person in the commission of the offense.*

"(c) Accomplice defined.—*A person is an accomplice of another person in the commission of an offense if:*

"(1) *with the intent of promoting or facilitating the commission of the offense, he:*

"(i) solicits such other person to commit it; or

"(ii) *aids or agrees or attempts to aid such other person in planning or committing it  .  .  . .*" (Emphasis added.)

Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 306.

The evidence in the instant case was clearly sufficient to uphold a finding that appellant was an accomplice and thus accountable for the actions of her co-defendants. Since we

have already found sufficient evidence to prove a conspiracy, it follows that it has also been shown that appellant has "agreed to aid" in the planning or commission of a robbery. Appellant is thus an accomplice, making her accountable for the actions of her co-defendants under § 306 of the Crimes Code. The evidence is also sufficient to show that the co-defendants were guilty of robbery, as a reasonable inference may be drawn that the co-defendants used force to take, or in an attempt to take, the victims' money. This is shown by the evidence that the pockets of one of the victims were outturned, and the evidence that a glass bank in Billingsley's home was broken with no money left.[1] The evidence was sufficient to sustain appellant's convictions of robbery and conspiracy.

Appellant next argues that the court below erred in refusing to suppress her confession. She advances two theories to support her contention. She first alleges the confession was the product of an unnecessary delay between arrest and arraignment, thus violative of Pa.R.Crim.P. 118 and our decision in *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). She also argues that the confession was constitutionally involuntary. We disagree with both contentions.

The facts are as follows. Police located appellant in late July, when she returned a call to Detective Rosenstein of the Philadelphia police. Appellant voluntarily accompanied police to the Police Administration Building, where they arrived at 1:10 p. m. on July 29, 1974. Appellant was not a suspect; police wanted to interview her because she had worked for the victim at his card games. After being placed in an interview room, appellant was left alone until 1:55 p. m. She was not informed of her constitutional rights because she was not a suspect. By 3:30 p. m., Detective Rosenstein had uncovered enough inconsistencies in appellant's story to warn her of her constitutional rights and to

---

1. In *Commonwealth v. Warren,* 475 Pa. 31, 379 A.2d 561 (1977), we upheld the robbery conviction of appellant's co-defendant on substantially the same evidence as presented in the instant case.

ask her to take a polygraph examination. Appellant agreed to take the exam.

Between 3:30 and 5:05, appellant was not questioned. At 5:05 p. m., appellant was again warned of her constitutional rights, which she waived. The polygraph examination was conducted between 5:20 p. m. and 6:35 p. m. After the test, appellant was informed that polygraph results indicated deception on her part and she was again warned of her constitutional rights. Immediately after waiving these rights, appellant gave an inculpatory statement which began at 7:00 p. m. and was completed at 9:30 p. m. She was arraigned sometime thereafter.

■ Appellant claims that the confession should have been suppressed because of Pa.R.Crim.P. 118 and our decision in *Commonwealth v. Futch, supra.* We need not reach the merits of this claim, however, since it has not been preserved for appellate review.

Pa.R.Crim.P. 323(d) provides:

"The application shall state specifically the evidence sought to be suppressed, *the specific constitutional grounds rendering the evidence inadmissible,* and shall state with particularity the facts and events in support thereof." (Emphasis added.)

Appellant's suppression motion makes no mention of either Pa.R.Crim.P. 118 or *Commonwealth v. Futch, supra.* In fact, the motion contains the following heading:

"PETITION TO SUPPRESS A CONFESSION AND EVIDENCE OBTAINED AS THE RESULT OF A POLYGRAPH TEST ON THE GROUNDS OF INVOLUNTARINESS AND DENIAL OF THE ASSISTANCE OF COUNSEL."

As we have held that a claim of voluntariness is insufficient to preserve a *Futch* claim, *Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975), we need not consider this claim.

■ Appellant next alleges that the confession should have been suppressed on grounds of involuntariness. Appel-

lant, a self-admitted heroin addict, claims she was suffering withdrawal symptoms during questioning, thus allowing her will to be overborne, rendering the confession inadmissible.

In *Commonwealth v. Kichline,* 468 Pa. 265, 361 A.2d 282 (1976), we stated:

" . . . Although there is no single litmus-paper test for determining the voluntariness of a confession, it must be established that the decision to speak was a product of a free and unconstrained choice of its maker. . . . All attending circumstances surrounding the confession must be considered in this determination. These include: the duration and methods of the interrogation; the length of delay between arrest and arraignment; the conditions of detainment; the attitudes of the police toward defendant; defendant's physical and psychological state; and all other conditions present which may serve to drain one's power of resistance to suggestion or to undermine one's self-determination." (Citations omitted.)

We have also said:

"Our review is limited to determining whether the findings of the court below are supported by the record and whether the inferences and legal conclusions based thereon are correct. Further, we need consider only the Commonwealth's evidence and so much of the appellant's evidence as remains uncontradicted." *Commonwealth v. Williams,* 476 Pa. 344, 382 A.2d 1202 (1978).

While appellant testified she was suffering from withdrawal during the interrogation process, the suppression court found that appellant:

" . . . appeared alert and responsive at all times. She was not mistreated or abused. No threats were made against her, and no promises were made to her. She appeared to be in no pain and made no request to Detective Rosenstein. She was not under the influence of narcotics and was not suffering the effects of withdrawal." (Finding of Fact # 14.)

Our review of the record indicates these findings of fact are supported by the record. We further can find no evidence of the Commonwealth's or uncontradicted evidence of appellant's which would require us to overturn the suppression court's conclusion that the confession was voluntary.

▇ Appellant next complains that the court erred in overruling a defense objection to the following exchange during the cross-examination of defense witness Denise Walker.[2]

"MR. DeSIMONE (District Attorney)

"Q. Do you remember being asked this question: 'Has Tom'—your boyfriend—'spoken to you regarding these murders?

'Answer: When I told him that you'—meaning Detective Rosenstein—'wanted to speak to Connie about it, he saiu she *probably* knows what happened.'

Do you remember that?

"MR. LERNER (Defense counsel): I will object to it.

"THE WITNESS: Yes.

"THE COURT: What is your objection?

"MR. LERNER: To hearsay.

"MR. DeSIMONE: Statement by her.

"THE COURT: Overruled.

"BY MR. DeSIMONE:

"Q. Is that right?

"A. Yes.

"Q. So Tom didn't even know anything about it, did he?

"A. He didn't"

(Emphasis added.)

Appellant claims she was prejudiced by the admission of the hearsay statement. She does not, however, explain how the remark prejudiced her case. As the trial court stated in its opinion:

2. Ms. Walker testified that, among other things, appellant had told Ms. Walker that she had been with Tom Saunders (Ms. Walker's boyfriend) at the time of the slayings.

194

" . . . The utterance by Saunders (Tom) which the witness had related to Rosenstein and was made to repeat to the jury, was not factual, but on its face, mere surmise on Saunders' part. Further, it did not charge defendant with participation in or presence at the crime, but only with some knowledge of it, which might have been quite innocent. . . ."

Since appellant knew about the homicides before being contacted by police, we agree with the trial court's characterization.

As we stated in *Commonwealth v. Palmer,* 463 Pa. 26, 36, 342 A.2d 387, 392 (1975):

" . . . ' "[e]very unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial" '. Rather the remark must be ' "*of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial*" '. [Emphasis in original.] *Commonwealth v. Goosby,* 450 Pa. 609, 611, 301 A.2d 673, 674 (1973), quoting from *Commonwealth v. Phillips,* 183 Pa.Super. 377, 382, 132 A.2d 733 (1957)."

We do not believe the challenged remark can be said to have deprived appellant of a fair trial.

■ Appellant next claims she was denied a fair trial because the judge who heard her suppression motion was the same judge who had presided at the trial of her co-defendant Warren. Appellant argues that since she was implicated in the killings at the co-defendant's trial, the judge who presided at both cases had received prejudicial information at the co-defendant's trial, making it impossible to judge appellant's credibility against the credibility of police. We need not reach the merits of the claim, however, because at the suppression hearing, appellant, *without objection,* allowed into evidence testimony that she admitted killing one of the victims and allowed her full statement to be admitted into evidence. By allowing the admission of this evidence at the suppression hearing, appellant allowed the suppression

judge to learn the same "prejudicial" information which was received at the co-defendant's trial. Under these circumstances, appellant is now precluded from raising this issue.

■ Appellant finally argues that the trial court erred in refusing her requested instruction on involuntary manslaughter. Since this crime was committed after the effective date of the new Crimes Code, appellant was entitled to the charge upon request. *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199 (1977). (Opinion of Roberts, J., joined by O'Brien, J. and Manderino, J., announcing the decision of the court); *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977). (Concurring opinion by Roberts, J., joined by O'Brien, J.). *Commonwealth v. Ford*, 474 Pa. 480, 378 A.2d 1215 (1977). (Concurring opinion by Roberts, J., joined by O'Brien, J.). Since the trial court refused appellant's requested instruction, she is entitled to a new trial.

Judgments of sentence for murder of the second degree at No. 347 January Term, 1976 are reversed.

Judgments of sentence at No. 387 January Term, 1976 are affirmed.

PACKEL, former J., took no part in the decision of this case.

POMEROY, J., files a concurring opinion in which EAGEN, C. J., joins.

NIX, J., files a concurring opinion.

ROBERTS, J., concurs in the result.

MANDERINO, J., files a concurring and dissenting opinion.

POMEROY, Justice, concurring.

I agree with the plurality that there should be a new trial on the homicide charge, but cannot join Mr. Justice

O'BRIEN's reasons for so concluding, as revealed by the citations in the last paragraph of his opinion before the mandate.[1]

The proposition that an accused in a prosecution for murder is entitled to a charge on involuntary manslaughter when there is no evidence that could justify that verdict has never been concretely presented to this Court and has never been accepted by a majority of this Court. See *Commonwealth v. Polimeni*, 474 Pa. 430, 442, 378 A.2d 1189, 1196 (opinion of POMEROY, J., joined by EAGEN, C. J., announcing the decision of the Court). See also *Commonwealth v. Garcia*, 474 Pa. 449, 378 A.2d 1199, 1210 (1977) (POMEROY, J., concurring); *Commonwealth v. Ford*, 474 Pa. 480, 485, 378 A.2d 1215, 1218 (opinion of POMEROY, J., joined by EAGEN, C. J., announcing the decision of the Court); *Commonwealth v. Gartner*, 475 Pa. 512, 532, 381 A.2d 114, 124 (1977) (POMEROY, J., concurring). In the case now before us there was sufficient evidence from which the jury could rationally conclude that the crime, if any, for which Dussinger could properly be convicted would be involuntary manslaughter.[2] Since the trial judge refused a timely request for an instruction on involuntary manslaughter, I

1. In the appeal from the judgments of sentence for robbery and conspiracy at No. 387, I join in Mr. Justice O'BRIEN's opinion.

2. Appellant's statement to the police, which was read into evidence, essentially stated that she did not know that she was part of a robbery when she went into Willie Billingsley's house and that the gun she later held near Ernest Barnes discharged accidentally when she was startled by the sound of gunfire from upstairs. In light of her statement, the facts that appellant did not move the involuntary manslaughter indictment to trial at the outset of the case and that she presented testimony seeking to establish an alibi do not mean that a verdict of involuntary manslaughter was impermissible. See *Commonwealth v. Ford*, 474 Pa. 480, 485, 378 A.2d 1215, 1218 (1977) (opinion of POMEROY, J., joined by EAGEN, C. J., announcing the decision of the Court); *Commonwealth v. Haywood*, 464 Pa. 226, 230–32, 346 A.2d 298 (1975); *Commonwealth v. Rose*, 457 Pa. 380, 389–90, 321 A.2d 880 (1974). The jury is entitled to believe all, part, or none of the evidence presented by witnesses at trial. See, e. g., *Commonwealth v. Scoggins*, 466 Pa. 355, 359, 353 A.2d 392 (1976); *Commonwealth v. Marlin*, 452 Pa. 380, 384, 305 A.2d 14 (1973).

concur in the conclusion that a new trial on the homicide charge is required. The question whether a defendant is always entitled to such a charge is not present on this record and should be left for another day.

EAGEN, C. J., joins in this concurring opinion.

NIX, Justice, concurring.

Today's decision requires that I repeat my disagreement with the various theories expounded by my brethren in the *Ford, Garcia,* and *Polimeni* decisions. *Commonwealth v. Ford,* 474 Pa. 480, 486, 378 A.2d 1215, 1218 (1977) (NIX, J., dissenting); *Commonwealth v. Garcia,* 474 Pa. 449, 471, 378 A.2d 1199, 1210 (1977) (NIX, J., dissenting); *Commonwealth v. Polimeni,* 474 Pa. 430, 449, 378 A.2d 1189, 1199 (1977) (NIX, J., dissenting). I remain unconvinced that the adherence to a lesser included offense analysis or to a theory of a jury's "mercy-dispensing power" compels an unconditional right in all murder trials to an involuntary manslaughter instruction upon request by the defense. Nor do I believe that an instruction for involuntary manslaughter should be allowed simply because there may be a reasonable basis in the evidence to support a finding of involuntary manslaughter. *See Commonwealth v. Ford, supra,* 474 at 485, 378 A.2d at 1216 (POMEROY, J., announcing the decision of this Court); *Commonwealth v. Garcia, supra,* 474 Pa. at 470, 378 A.2d at 1210 (POMEROY, J., concurring); *Commonwealth v. Polimeni, supra,* 474 Pa. at 447, 378 A.2d at 1191 (POMEROY, J., announcing the decision of this Court). I do, however, accept the conclusion that the requested manslaughter instruction in this case was improperly denied, because such a charge was essential under the evidence presented to inform the jury of the competing contentions raised in the lawsuit. I therefore agree that the second degree murder conviction returned in this action must be reversed.

In the present lawsuit, appellant did not contest that she caused the death of Ernest Barnes or that the killing did not

constitute a criminal homicide. The critical issue at trial was whether there was a malicious killing (i. e., one committed in the course of the commission of the felony of robbery) or a nonmalicious unintentional killing (involuntary manslaughter). Thus, we are here presented with a situation where the factual dispute centers upon the presence or absence of the element of malice, the element which distinguishes the higher grade of homicide from the lesser grade.* This is precisely the type of situation where an instruction on the lesser offense, upon request, is warranted. *See* *Commonwealth v. Manning,* 477 Pa. 495, 500, 384 A.2d 1197, 1199 (1978) (NIX, J., dissenting); *Commonwealth v. Gartner and Pfaff,* 475 Pa. 512, 516 n. 3, 381 A.2d 114, 125 n. 3 (1977) (NIX, J., concurring and dissenting). Where the factual posture effectively excludes a realistic possibility of an acquittal, as is the case here, to deprive the accused of her right to allow the jury to consider the lesser offense is tantamount to depriving her of a defense. Where instructions on the lesser offense are given, the verdict will necessarily reflect the jury's resolution of the disputed factual issue at trial. The finding of the higher verdict would evidence the prosecutor's success in establishing the disputed element. Likewise the return of a guilty verdict on the lesser offense would reflect his failure to establish that element which distinguishes the two offenses.

MANDERINO, Justice, concurring and dissenting.

While I concur in the majority's reversal of appellant's conviction for murder of the second degree, I would also reverse appellant's convictions for robbery and conspiracy, and grant appellant a new trial as to all charges. In my view, appellant was denied due process of law when the judge who presided at the trial of appellant's co-defendant

---

* A rational basis theory would allow the instruction of involuntary manslaughter even though the dispute relates to an element which is common to both the higher and lesser degree of a crime. See *Commonwealth v. Gartner and Pfaff,* 475 Pa. 512, 516 n. 3, 381 A.2d 114, 125 n. 3 (1977) (NIX, J., concurring and dissenting).

also presided at appellant's suppression hearing unbeknownst to defense counsel. Under the circumstances of this case, where the evidence at co-defendant's trial, other than appellant's confession, implicated her in the homicide/robbery for which she is now charged, it was impossible for the judge to impartially consider the arguments presented in appellant's suppression motion and to impartially weigh appellant's credibility against the credibility of the police.

The majority refused to reach the merits of appellant's argument, reasoning that at the suppression hearing, appellant did not object to the admission of her statement that she admitted killing one of the victims. The majority asserts that appellant therefore allowed the suppression judge to hear the same incriminating evidence which he heard at the earlier trial, thus appellant was not prejudiced and cannot now complain.

In this appeal, as is usually the case, the resolution of issues involving voluntariness and pre-arraignment delay will turn on the credibility of the police officers and the defendant. That assessment of credibility should be made by an impartial judge who has not previously been exposed to evidence indicating the defendant's guilt. The judge in this case had, prior to the suppression hearing, presided at the trial of appellant's co-defendant. At that trial, testimony was presented that appellant had been seen standing over the victim's body with a gun in her hand. Having one's credibility judged by someone who has previously been exposed to such incriminating evidence violated due process. Such a due process violation is not vitiated by the fact that appellant allowed the alleged confession to be read to the suppression court. At the suppression hearing, appellant challenged the statement as being involuntary. As such, she indirectly challenged its truthfulness. She should not have been forced to do that before a judge who had previously heard evidence concerning that issue. I therefore dissent.